## DUKES v. FAULK.

1. LIMITATIONS OF ESTATES—DEFINITIONS.—The word "heirs" means the persons in whom real estate vests, by operation of law, on the death of one who was last seized, and, ordinarily, we must look to the statute of distributions to ascertain the persons who are entitled to the character of heirs, as well as the shares to be enjoyed by them.

2. IBID.—IBID.—Where a grant or devise is made to "heirs at law," "legal heirs," "heirs of the body," etc., as a class, to take effect at a particular time, such parties take as purchasers and not by descent; especially so, if the estate is vested absolutely in them by words of inheritance. And in such case, if not otherwise directed, they take *per stirpes* under the statute of distributions.

3. IBID.—IBID.—But where the devise is to the "heirs of the body, share and share alike," or other words are used which indicate an equal division, and words of inheritance are superadded, the statute of distributions will determine the persons who are to take, while the method of distribution is fixed by the devise, and they take as purchasers *per capita*, only those taking who were both lineal descendants and also heirs, under the statute, of the deceased person of whose body they had sprung.

4. IBID.—IBID.—Under a devise to E. for life, and at her death to the heirs begotten of her body, who were then living, share and share alike, to them, their heirs and assigns forever, distribution must be made according to the circumstances existing at the death of the life tenant; and, therefore, only the surviving heirs of her body, to wit, her children, then living (but not their issue), and such of her then living grand-children and

great-grand-children as had survived all of their ancestors in the line of descent, take the estate between them *per capita* and in fee.

5. IBID.—REMAINDERS.—The devise above recited was not affected by the additional provision, that "in the event of there being but one, then and in such case he or she shall be entitled to such share as his, her, or their ancestors would have been entitled if living," no such contingency having occurred.

Before WITHERSPOON, J., Charleston, November, 1891.

This was an action by Oscar F. Dukes and others against John Faulk and others. The report of Master Sass was as follows:

Dorcas Elmore, late of Charleston, died many years ago, leaving in force her last will and testament, a copy of which is hereto attached and marked exhibit "A." The will was admitted to probate, 10th January, 1827. By said will, she devised the property, the subject of this suit, to her son, Stent Elmore, and her daughter-in-law, Emelia Elmore, wife of said Stent Elmore (called in the will "step-daughter"), for life, with certain limitations over, which will hereafter be considered. The will required the executors of Dorcas Elmore to sell a house and lot belonging to testatrix, on Church street, in Charleston, and to invest the proceeds in the purchase of a small house and lot, to be subject to the limitations above referred to. On 31st July, 1828, the executors, in pursuance of said instructions, purchased from Dr. William A. Holmes the house and lot on Vernon street, the subject of this suit, and the same was conveyed to the said executors by Dr. William A. Holmes, by deed, dated 31st July, 1828, and recorded the same day in book X 9, p. 327. The deed recites the will of Dorcas Elmore, and conveys the said premises to "Peter Ehney and John Holmes, executors aforesaid, and the survivors of them, his heirs and assigns forever. *In* trust, nevertheless, to and for the uses and purposes, and with the conditions and limitations set forth in the above recited part of the will of Dorcas Elmore, in pursuance of which the above premises have been this day purchased of me by the said executors." Stent and Amelia Elmore survived the testatrix.

Stent Elmore died many years ago, leaving surviving him his widow, Emelia, and three children, James W. Elmore, Pamelia E. Elmore, and Mary Ann Elmore. James W. Elmore died unmarried and without issue in 1856 or 1857. Pamelia E. Elmore married Thomas Alexander, and died about eighteen years ago, leaving two children, Florence A. Alexander, who married a Mr. Faulk, and lived in Braden, Tenn., and had five children, to wit, Charles, Undine, Carrie, Edith, and Inez Faulk (Mrs. Faulk has since departed this life, leaving surviving her husband, John Faulk, and the aforesaid five children); and Henry Alexander, who lives at Little Rock, Ark., and is married, and has one child, Pearl L. Alexander. Mary Ann Elmore married F. O. Dukes; she died in July, 1888, leaving the following children: Elmore Dukes, Oscar F. Dukes, Undine L. Dukes, and Teressa G. Dukes. Elmore Dukes is married; Undine Dukes married James E. Thomas, and died April, 1889, leaving issue, James W. Thomas, aged fourteen years, and Ancrum O. Thomas, George V. Thomas, Leo D. Thomas, and Elmore S. Thomas, infants under fourteen years of age. The other children of Mary Ann Elmore are still alive. Mrs. Emelia Elmore, the surviving life tenant, died 17th September, 1889. At her death, therefore, there were living the following lineal descendants: Florence A. Faulk and her children, being the grand-children and great-grand-children of Emelia Elmore; Henry Alexander, grand-child of Emelia Elmore; Pearl L. Alexander, his daughter, a great-grand-child; Elmore Dukes, Oscar F. Dukes, Teressa G. Dukes, grand-children of Emelia Elmore; and James W., Ancrum O., Geo. V., Leo D., and Elmore S. Thomas, great-grand-children of Emelia Elmore; and Alonzo, Julia, May, Emma, and Vyra Dukes, children of Elmore Dukes, and great-grand-children of Emelia Elmore.

The main question of law in this case arises under the devise in the will of Dorcas Elmore, as to whether the division among the heirs of Emelia Elmore is to be made *per stirpes* or *per capita*, and upon this point I beg to report my conclusion of law as follows:

The devise is in these words: "For the sole, separate, and

33—37

exclusive use, etc., of my step-daughter Emelia and my son Stent, during their natural lives, and to be in nowise subject to his debts, control, or intermeddling whatsoever, and after the death of my said step-daughter and my son Stent, it is my will that it shall descend *to such heirs as my said step-daughter Emelia and my son Stent shall leave living at the time of their death, begotten by them, share and share alike, to them and their heirs, executors, administrators, and assigns, forever.* And, in the event of there being but one, then and in such case he or she shall be entitled to such share as his, her, or their ancestors would have been entitled, if then living; and should my said step-daughter Emelia *leave no heirs begotten by my said son Stent, capable of inheriting,* then it is my will that the said property shall descend to my daughter Ann Eliza, wife of A. Gilliland," etc.

As before stated, Emelia Elmore left surviving her no children, but certain grand-children and great-grand-children, children of both living and deceased grand-children. Do they all take the estate between them equally, *per capita,* or is the division to be made *per stirpes,* the children of Pamelia E. Alexander taking one-half by representation and the children and grand-children of Mary Ann Dukes taking the other half?

This is not a case in which it is necessary to resort to the statute to discover the heirs, for the idea of statutory heirs is expressly excluded by the words "begotten by them," which clearly refers to lineal heirs. But, on the other hand, these words cannot mean only *children* of Stent and Emelia, for it has frequently been decided that the words "lawfully begotten by A," are not *per se* enough to limit a bequest "to the issue of A" to his children. 2 Jarm. Wills (5th Am. ed.), p. 642, and cases cited. The word "heirs," as used in this clause, evidently indicates a class of persons who take in their own right, and in such case, even without the superadded words "share and share alike," the distribution would be *per capita.* But when the devise is to such heirs as shall be living at the death of the life tenant, "share and share alike, to them, their heirs, executors, etc.," the mode of distribution is clearly indicated by the will to be an equal division *per capita.* *Allen* v. *Allen,* 13 S. C., 531; *Kerngood* v. *Davis,* 21 *Id.,* 207.

The only doubt that could arise as to the correctness of this construction would be suggested by the clause following, "and in the event of there being but *one*, then, and in such case, he or she shall be entitled to such share as his, her, *or their ancestors* would have been entitled if then living." The meaning of this clause is very obscure; it is ungrammatical and unintelligible. So far as it affects the intention of the testatrix, it seems to me simply to intend to say, that if only a single heir should be living at the life tenant's death, he should take the whole estate. After having provided for a distribution *per capita*, apparently realizing that in the course of events it might happen that there should be but one representative, who, as a matter of fact, might take both *per stirpes* and *per capita*, the testatrix, to provide for such a contingency, directed that person should take the whole estate, which would be in perfect accord with the original devise. At all events, and in spite of the canon of construction that the later cause should govern, it does not seem to me that this obscure clause should be allowed to modify the clearly expressed intention of the previous clause, that each of the heirs shall receive an equal share, and that all shall share alike. I hold, therefore, that the words, "heirs living at the time of their death, begotten by them," are equivalent to *lineal descendants*, and that upon the death of the life tenants, all the lineal descendants of Stent and Emelia, both grand-children and great-grand-children, and great-grand-children whose parents are alive, as well as the great-grand-children whose parents are dead, took *per capita* equal portions of the estate. See *Evans v. Godbold*, 6 Rich. Eq., 26.

All the parties in interest, under any view which may be taken of the devise, are properly before the court. The testimony shows the property to be incapable of partition in kind among the heirs, and that a sale will be necessary. It also shows that the parties own no other real estate in common. I respectfully recommend that the real estate be sold under the order of the court, and that the proceeds of sale, after the payment of the costs and expenses of sale, be divided among the lineal descendants of Stent and Emelia Elmore living at the death of Emelia Elmore, in equal parts.

The Circuit decree was as follows:

The object of this action is to have the will of Dorcas Elmore construed, so far as it affects the rights of the parties to the action. All of issues were referred to Master Sass, who filed his report January 10, 1891, and the cause was heard on exceptions by the plaintiff and some of the defendants to said report. [Here follows a restatement of the case as made by the master.]

The exceptions allege that the master erred in holding (1) that all of the *lineal descendants* took, at the death of the life tenant, including those whose parents were living, as well as those whose parents are dead, and (2) in not holding that, at the death of the life tenant, the defendant, Henry Alexander, and Florence A. Faulk, children of Pamelia E., then being alive, are entitled to one-half of the estate, and that the other half is divisible among the defendants, the Dukes and the Thomas children, as heirs at law of Mary Ann Dukes. The master states that all parties in interest, under any view of the decree, are before the court, that the house and lot in question cannot be partitioned in kind, and that the parties own no other real estate in common.

In construing the will, effect must be given to the intention of the testatrix, as discovered by a consideration of all the provisions of the will, provided the expression of such intention in the will does not conflict with the rules adopted for the construction of wills. When technical words are used, they should have their legal effect, unless subsequent inconsistent words are used, showing that the testatrix meant otherwise. The conclusion of the master is based upon the provision, that at the death of the life tenant, the property "shall descend to such heirs as my said step-daughter Emelia and my son Stent shall leave living at the time of their death, begotten by them, share and share alike," without giving effect to the provision which immediately follows, that if but one *heir* survives, "he or she shall be entitled to such share as his, her, or their ancestors would have been entitled if then living." The testatrix must have had some object in view in making each of the provisions above quoted. If, upon the death of the life tenants, the testatrix intended that their *lineal descendants* should take *per capita*, share

and share alike, as found by the master, she could not have had any object in incorporating in her will the latter clause above quoted. Construing the above quoted provisions of the will together, I am satisfied that the testatrix intended, by the use of the word "heirs," to refer to the children of Stent and Emelia (heirs in the first degree) that might survive their parents, who should take share and share alike. By the subse-quent clause, the testatrix intended to provide for the children of a deceased child of Stent and Emelia, *alive at the death of the life tenant*, by giving them such share as his, her, or their ancestor would have been entitled if then living. In other words, in directing that the property "shall descend" at the death of the life tenant, and in providing that the heir should take such share as his, her, or their ancestors would have taken if then living, the testatrix intended that the heirs should take by *descent per stirpes*, and not as *purchasers*.

The words, "share and share alike," were only intended to apply to "heirs taking in the same degree." I cannot concur with the master in the conclusion, that all of the lineal descendants of Stent and Emelia take *per capita* in equal portions, under the clause of the will of Dorcas Elmore, above quoted. Under the provisions of the said will, I conclude that the following named parties take by descent *per stirpes*, in the following proportions, to wit: The defendants, Henry Alexander and Florence A. Faulk, as children of Pamelia E. Alexander, are each entitled to the one-fourth (¼) interest in the house and lot; the interest of Florence A. Faulk, now deceased, is divisible among her heirs at law, as follows: To her husband, John Faulk, one-twelfth (1–12), and to her five children, to wit, Charles, Undine, Carrie, Edith, and Inez Faulk, each the one-thirtieth (1–30); to the plaintiffs, Oscar F. Dukes, Elmore A. Dukes, and Teressa G. Dukes, each the one-eighth (⅛); and to the five children of Undine L. Thomas, to wit, James W., Ancrum O., George V., Leo D., and Elmore S. Thomas, each the one-fortieth (1–40) interest in said house and lot.

To this extent, it is ordered and adjudged, that the master's report be overruled, and the exceptions to said report be sustained. It is further ordered and adjudged, that, after duly

advertising the premises, G. H. Sass, one of the masters for Charleston County, do sell at public outcry, &c.

The Thomas minors gave notice of appeal on this exception: That the distribution of the proceeds of sale of the house and lot should be in ten equal parts, one to each of these five appellants, the three plaintiffs, Henry Alexander, and to the heirs of Florence Faulk, deceased.

The Dukes minors excepted as follows: Because his honor was in error in holding, "that the testatrix intended, by the use of the word 'heirs,' to refer to the children of Stent and Emelia (heirs in the first degree) that might survive their parents, who should take, share and share alike;" and, further, in holding, that "the testatrix intended that the 'heirs' should take by descent *per stirpes,* and not as purchasers—the words, 'share and share alike,' were only intended to apply to heirs taking in the same degree;" whereas he should have held with the master, "that the words, 'heirs living at the time of their death, begotten by them,' are equivalent to 'lineal descendants,' and that upon the death of the life tenants, all the lineal descendants of Stent and Emelia, both grand-children and great-grand-children, and great-grand-children whose parents are alive, as well as those whose parents are dead, took *per capita* equal portions of the estate."

*Mr. W. M. Thomas,* for the Thomas minors.

*Messrs. Rutledge & Rutledge,* for the Dukes minors.

*Messrs. W. H. Thomas* and *A. J. Simons,* for respondents.

September 26, 1892. The opinion of the court was delivered by

MR. JUSTICE POPE. This action came on to be heard by his honor, Judge Witherspoon, at the fall term, 1891, of the Court of Common Pleas for Charleston County, and on the 4th day of January he filed his decree. From this decree an appeal has been taken by two sets of defendants, viz., *the Thomas minors and the Dukes minors.* There is no question of fact in-

volved; the appeal relates solely to questions of law, which grow out of the following provision of the last will and testament of Mrs. Dorcas Elmore, of the city of Charleston, in this State, who died on the 10 January, 1827, to wit: A house and lot, "for the sole, separate, and exclusive use, etc., of my step-daughter (daughter-in-law) Emelia and my son Stent, during their natural lives, and to be in no wise subject to his debts, control, or intermeddling whatever, and after the death of my said step-daughter (daughter-in-law) and my son Stent, it is my will that it shall descend to such heirs as my said step-daughter (daughter-in-law) Emelia and my son Stent shall have living at the time of their death, begotten by them, share and share alike, to them, their heirs, executors, administrators, and assigns, forever. And in the event of there being but one, then, and in such case, he or she shall be entitled to such share as his, her, or their ancestors would have been entitled if then living, and should my said step-daughter (daughter-in-law) Emelia leave no heirs, begotten by my said son Stent, capable of inheriting, then it is my will that the said property shall descend to my daughter Ann Eliza, wife of A. Gilliland," etc.

A brief reference to the facts may not be amiss just here. Stent Elmore died many years ago. Emelia, his wife, lived until the 17 September, 1889. The children born to Stent and Emelia were three, James W. Elmore, Pamelia E. Elmore, and Mary Ann Elmore, all of whom died during the lifetime of the surviving life tenant, Emelia Elmore. James W. Elmore died in 1856 or 1857, unmarried and without issue. Pamelia Elmore, having intermarried with one Thomas Alexander, died 28 April, 1872, leaving two children, both of whom survived the life tenant, one of whom, Florence Faulk, has died, leaving a husband and five children. Mary Ann Elmore, who had married one Dukes, died 17 July, 1888, leaving children and grand-children. The names of all these parties are set forth carefully in the "Case," and it will be unnecessary to state them again, especially as the master's report and the decree of the Circuit Judge must be printed. All the children being dead, and there being children and grand-children of such children of Emelia and Stent Elmore alive at the death of the

surviving life tenant, this contest has arisen as to the distribution of the proceeds to arise from the sale of the house and lot in question.

Three views have been presented to this court for its consideration : 1. That the proceeds of sale shall be so divided as that the children and grand-children of Mrs. Mary Ann Dukes shall receive one-half thereof, and the other half to be divided among the children and grand-children of Mrs. Pamelia Alexander *per stirpes.* 2. That such proceeds shall be divided amongst the ten parties who stood, on the death of the life tenant, as heirs of her body, under the laws of this State, *per capita.* 3. That such proceeds shall be divided among all the grand-children and great-grand-children of the life tenant, *per capita.*

We will first consider the general principles of our laws pertaining to an estate, provided for such persons as shall, at a particular time named by the testator, sustain a particular character. Then we will briefly notice the particular circumstances that are alleged to control the distribution here.

I. Our act of 1791 wrought a great change in the laws of inheritance that formerly prevailed here on the same subject, and derived from the mother country, and it was to be expected that the definition of the term "heirs" should be thereby changed. Accordingly, we find, in the decisions of our courts, that "heirs" came to mean such persons in whom real estate vests by operation of law, on the death of one who was last seized. *Seabrook* v. *Seabrook*, McMull. Eq., 206, 207 ; *Templeton* v. *Walker*, 3 Rich. Eq., 550. It was stated in the case first quoted : "The court is unable to find any better definition of an heir than the person in whom real estate vests by operation of law on the death of one who was last seized. This law varies in different countries. in the same country at different periods, and in the same country in relation to different estates. By the common law, the father or grand-father would be excluded. In England, the estate in general descends to the eldest son, to the exclusion of daughters and other sons. By the laws of South Carolina, a more equitable distribution both of real and personal estate is provided. In order to ascertain who is the heir, it is necessary only to inquire to whom, by the

law of the land, would the estate pass in case of intestacy.''
In the second case cited this language occurs : ''The term heirs
is inapplicable to the succession to personal estate; and even
as to real estate, we have no other heirs except the *haeredes facti*
of our statute of distributions. So that ordinarily we must
look to the statute of distributions to ascertain the persons who
are entitled to the character of heirs, as well as the shares to be
enjoyed by them.

When, in a grant or devise, words are used, such as ''heirs
at law,'' ''legal heirs,'' ''heirs of the body,'' or kindred phrases
or terms, betokening a grant, or gift, or devise to such
as a class, to take effect at a particular time, such par-
ties took as purchasers, and not by descent, especially
if the estate to be vested was made absolute by the additional
words, ''their heirs and assigns forever.'' More frequently
the question raised in connection with such words has been,
the method of distribution of the estate so vested among the
individuals or members of the class, and, for a while, in this
State, this doctrine was unsettled. In *Campbell* v. *Wiggins*,
Rice Ch., 10, it was held to be a division *per capita*. However,
this view, though much shaken, still prevailed in *Lemacks* v.
*Glover*, 1 Rich. Eq., 141. But at length, in the case of *Tem-
pleton* v. *Walker, supra*, decided in 1850 by the Court of Errors,
it was held, that where no words were used in the grant or de-
vise providing for a different distribution, the rule as laid down
in our statute of distributions, in cases of intestacy, should not
only determine the persons composing the class, but should also
fix the share of each. In the words of that decision : ''We are
justified in establishing as a general rule, in cases like the one
before us, that the partition shall be *per stirpes.*'' And so the
law remains until this day.

It will be observed, that such last announced rule only ap-
plies to those cases where the grantor or devisor has not indi-
cated a different mode of partition; it is always admit-
ted, that such grantor or devisor has a perfect right,
in the instrument that announces his determination on
this point, to fix the shares of each one of a class, provided,
always, the same is not in conflict with the law of the land.

34—37

Chief Justice McIver, in announcing the judgment of this court in the case of *Allen* v. *Allen*, 13 S. C., 512, says: "If, therefore, the gift is to a class of persons designated as heirs of a particular person, then, as it is necessary to resort to the statute to ascertain who are the individuals composing the class, resort must also be had to the statute to determine how, or in what proportions, such individuals shall take. This is upon the presumption that the donor, having by implication, at least, referred to the statute, as to the persons who are to take, also intended that reference should be had to the statute to determine the proportions in which they should take, *unless he expresses a different intention. But when he prescribes a different mode of distribution, then no such presumption can arise, and the distribution must be made in the manner prescribed.*" (Italics ours.) And so, too, in the case of *Kerngood* v. *Davis*, 21 S. C., 183, where Mr. Justice McGowan delivers the judgment of the court, this language is used (p. 207): "In such cases, after much discussion and some difference of opinion, it seems to have been settled as a rule of construction, that, 'wherever, by the terms of description in a devise or grant, resort must be had to the statute of distributions for the purpose of ascertaining the objects of the gift, resort must also be had to the statute to ascertain the proportions in which the donees shall take, *unless the instrument making the gift indicates the intention of the donor, that a different rule of distribution shall be pursued.*' *Campbell* v. *Wiggins*, Rice Ch., 10; *Lemacks* v. *Glover*, 1 Rich. Eq., 141; *Rochell* v. *Tompkins*, 1 Strob. Eq., 114; *Collier* v. *Collier*, 3 Rich. Eq., 555."

We think we may now announce as the law of this commonwealth, that, when the words, "heirs of the body," occur in a devise, accompanied by the words, "share and share alike," or "equally," or "in equal parts," or kindred words, and also the words, "their heirs, executors, administrators, and assigns," that we must look to the statute of distributions of our State for the parties who shall answer the description, and, therefore, take the devise, but that the method of distribution is fixed by the devise itself to be *per capita*, and *not per stirpes*, and that the estate is one of purchase, and not of descent. It

seems to us, that the "heirs of the body" must be persons, not only who answer the requirement of lineal descendants of the parent stock, but, also, such persons who would stand, at the date of the death of life tenant, as an heir, under the provisions of our statute of distributions. In *Templeton* v. *Walker*, 3 Rich. Eq., 550, *supra*, it is said: "No one can take as heir of the body of another, unless he fulfil the description, and is not only such person as would take the real estate of that other, under our act of distributions, but, likewise, a lineal descendant." In *Lemacks* v. *Glover*, *supra*, it is said: "In *Campbell* v. *Wiggins*, the legislature has made a grant to the heirs at law of Blake Baker Wiggins, deceased, and it was held, that the grand-children as well as the children were entitled. In this case the description is restricted to 'heirs of the body.' This includes all the lineal descendants of Mrs. Jane Glover, who were, also, at the time of her death her 'heirs,' according to the laws of the State; and, it may be added, it includes only such lineal descendants who are also heirs. In the language of *Matthews* v. *Paul*, 3 Swanst., 339, the rule must be the same both as to persons excluded as well as those included. They must answer the entire description at the period fixed."

To illustrate our meaning by stating the facts in the last quoted case. The will of Peter Sinkler gave the use of certain property to his sister, Jane Glover, for life; Mrs. Glover, at the time of her death, had but one child, Dr. Glover; testator, after the death of the life tenant (Mrs. Glover), bequeathed such property "to the heirs of her body, to them and their heirs and assigns, forever." Mrs. Glover died fifty-one years after her brother's death. She had four other children born to her, all of whom, but one (Mrs. Lemacks), died before Mrs. Glover, the life tenant, and all were survived by children. The question was made as to the distribution. It was held, that Dr. Glover took one share, Mrs. Lemacks one share, and each grand-child who was the child of a deceased child, took one share each. Both Mrs. Lemacks and Dr. Glover had children, but they were denied participation in the estate. Why? Because, at the death of Mrs. Glover, the life tenant, although *her lineal descendants*, they were not *her heirs*, under our statute of distri-

butions; their respective parents, Dr. Glover and Mrs. Le-
macks, were alive, and were such heirs.

Furthermore, in construing such a devise as that under con-
sideration, relation must be had to the circumstances that at-
tend the event of the falling in of the life estate, rather
than those that attended the death of the testator.

There is no reason in our law to favor such devise being
intended for children, to the exclusion of, or preference to,
other lineal descendants.    If the testator desired such result,
apt words therefor should have been used.    The words of this
devise plainly import, that those lineal descendants who should
survive the life tenants should take; *survivorship* was an ele-
ment in the power to take.    No estate was provided for those
who did not so survive the life tenant.    The estates provided
were contingent remainders, not vested, and it is felt that
there is no need to elaborate these propositions, since the de-
cisions of this court, in the cases of *Dickson* v. *Dickson*, 23 S.
C., 216, and *Roundtree* v. *Roundtree*, 26 *Id.*, 450.

II. Having disposed of the questions suggested by the ap-
peal here, so far as the same are of a general character, it will
be necessary to refer to so much of the Circuit decree
as seeks to give some controlling influence to the last
clause, "and in the event of there being but one, then,
and in such case, he or she shall be entitled to such share as
his, her, or their ancestors would have been entitled to, if liv-
ing."    As remarked at the bar, no such contingency as con-
templated by this language has occurred, whether you make
it read, child of Emelia, or child of a child, or child of a child's
child.    The testatrix could not have meant Emelia's child, for,
in that event, there could have been no ancestor who took a
share, for certainly Stent and Emelia took nothing that passed
to the "heirs of their bodies" through them.    And, if it meant
grand-child, it would be just as ineffective, for it was only in
the event there was only one such that anything like a *per stir-
pes* distribution was contemplated.    The result of our careful
attention to these matters is, that we conclude, that the follow-
ing lineal descendants of Emelia and Stent Elmore alone take,
and that, too, *per capita*, that is to say: Mrs. Faulk, Henry

Alexander, Oscar F. Dukes, Elmore Dukes, Teressa G. Dukes, James W. Thomas, Ancrum O. Thomas, George V. Thomas, Leo D. Thomas, and Elmore S. Thomas, the share (1–10) of Mrs. Faulk being divisible amongst her husband and five children, according to our statute of distribution.

It follows, therefore, that it is the judgment of this court, that the judgment of the Circuit Court be reversed, and the cause be remanded to the Circuit Court, to carry into effect the principles herein announced.