GEORGE W. JOHNSON *et al.* v. MARIA A. BODINE *et al.*, Appellants and PHOEBE J. FLINT, Appellant.

**Descent and Distribution:** HEIRS, PER CAPITA AND PER STIRPES. Where a testator leaves his estate to his two brothers for life, with the remainder to be "divided between my heirs-at-law," the heirs, consisting of children and grandchildren of deceased's brothers and sisters, take per stirpes, and not per capita, unless the will manifests a different intention.

**Heir:** BASTARD: *Recognition.* The children of an illegitimate daughter of testator's brother are entitled to a share in a devise to his heirs, in the right of their grandfather, when he and their mother are both dead, and she had been recognized by her father as his child, so as to be entitled to inherit from him.

*Appeal from Page District Court.*—HON. N. W. MACY, Judge.

WEDNESDAY, MAY 24, 1899.

ACTION for the partition of real estate. The trial court established and confirmed the respective interests of the parties, and directed a sale of the property. From that part of the decree fixing the interests of the various parties, defendants Phœbe J. Flint appeals, and from the decree fixing the plaintiff's interest certain of the defendants appeal. As Phœbe J. Flint first perfected her appeal, she will be called "appellant."—*Modified.*

*T. E. Clark* and *John W. Fisher* for appellant Phœbe J. Flint.

*Parslow & Scott, Levant D. Lester,* and *O. C. Greene* for appellants Nellie J. Bushman and others.

*J. E. Hill* and *John R. Good* for appellees.

DEEMER, J.—C. D. Lester died, testate, seised of the real estate sought to be partitioned, on the 5th day of

October, 1885. His will, was admitted to probate in November of that year, and contained the following, among other provisions: "Fourth. I do give and bequeath unto my beloved brother Isaac J. Lester one-half of my entire estate, both real and personal, with remainder to my heirs at law, during the life of my said brother; the trust of my brother for his natural life. Fifth. I do give and bequeath unto my beloved brother Garra Kimble Lester the use, income, and profit of one-half of my entire estate, both real and personal, during his natural life. The remainder as hereinafter stated. Sixth. It is my will that at the death of my brothers, Isaac J. Lester and Garra Kible Lester, that my entire estate, both real and personal, be divided between my heirs at law." Isaac J. Lester and Garra Kimble Lester, named in the will, both died since the death of the testator, and prior to the commencement of this action. The testator was never married, and his parents departed this life prior to the death of the testator. He left surviving him two brothers, Isaac J. and Garra Kimble, and the issue of three deceased sisters, to-wit: Catherine E. Caner, Amy Prime, and Phœbe J. Flint, Sr. Isaac J. Lester left surviving him three children, all of whom were living at the time of the testator's death. The other brother left surviving him four children, who were also living at the time the testator died, and the issue of three other children, who were alive on the 5th of October, 1885. One of these last-named children died after the death of the testator, leaving a husband, but no issue. Another died after the testator's death, leaving a husband and two children. The third of these children was an illegitimate daughter of Garra Kimble Lester. This daughter, who bore the name of Laura J. Johnson, died in the year 1891, leaving four children, each and all of whom were living at the time of the testator's death. It is admitted that Garra Kimble Lester recognized Laura J. Johnson to be his daughter, and that this recognition was in writing, and general and notorious. The

husband of Laura J. Johnson also survived her, but he devised all his interest in the testator's property to his children. Catherine Caner, a sister of the testator, who died before the testator, left four children surviving her, and these children were all alive when the testator died. Amy Prime and another sister, who died before the testator, left four children surviving, two of whom died prior to the death of the testator, without issue. Phœbe J. Flint, Sr., also a sister of the testator, died before he did, leaving a son, Garra K. Flint, who also died prior to the time of the testator's death, leaving as his only heir the defendant and appellant Phœbe J. Flint, who is now living, and who is the sole and only representative of this branch of the Lester family. The case involves a construction of that part of the will which we have quoted. On the one side it is insisted that the heirs take per stirpes, and not per capita, and that Phœbe J. Flint is entitled to one-fifth of the property, instead of the one-seventh which the trial court awarded her; while on the other hand it is contended that the per capita distribution ordered by the court is correct, and that the decree as to this appellant should be affirmed. Again it is insisted that the heirs of the illegitimate daughter of Garra Kimble Lester are not entitled to take under the will, because they could not have inherited from the testator; while counsel representing these parties, who will be designated the "Johnson heirs," argue that as Lester recognized Laura J. Johnson, during his lifetime, as his child, she and her heirs are entitled to inherit from him to the same extent and in the same manner as if she had been his legitimate child, and that, as they were entitled to inherit from him, they are also entitled to inherit property belonging to his brother, and are therefore entitled to take under the will of C. D. Lester. It will be noticed that the will directs that testator's estate, both real and personal, be divided between his heirs at law. In the recent case of *Kling v. Schnellbecker,* 107

Iowa, 636, we held that when an estate is to be divided equally between certain persons, whether specifically named, or designated by more general terms, as the children or heirs of certain persons, the language imports the taking of an equal share by each legatee, in the absence of other provisions showing a contrary intention, and that they take per capita, and not per stirpes. It has been truly said, however, that "this rule will yield to a very faint glimpse of a different intention in the context." See 2 Jarman Wills (Rand. & T. Ed.) p. 757, and cases cited. But the facts in the *Kling Case* are so different from those in the case at bar that neither the rule nor its exception applies. Here there is no division into classes, as in that case, and the part each of the heirs shall take is not prescribed. The will provides that the testator's entire estate shall be divided between his heirs at law. Resort must be had to construction to ascertain the objects of his bounty, and to determine the amount of the estate each beneficiary is entitled to receive. Who are testator's heirs at law? That question must be solved by turning to the statutes of descent, for "an heir is he upon whom the law casts the estate immediately upon the death of the ancestor." And as a general rule, parol evidence is not admissible to vary the meaning of the word. O'Hara, Wills, 297; *Weatherhead v. Baskerville,* 11 How. 329. Guided by these principles, we have no difficulty in determining, in this connection, who were the objects of the testator's bounty. But the more important question remains, do these heirs, standing in different degrees of relationship to the testator, take per capita and share alike, or do they take as heirs would have taken by the rules of descent? The authorities furnish a rule which answers this proposition. Thus, in the case of *Daggett v. Slack,* 8 Metc. (Mass.) 453, Chief Justice Shaw, speaking for the court, said: "The court are of opinion that, according to the established rule of law, a devise to 'heirs,' whether it be to one's own heirs or to the heirs of a third person, designates, not only the persons who

are to take, but also the manner and portions in which they are to take, and that, when there are no words to control the presumption of the will of the testator, the law presumes his intention to be that they shall take as heirs would take by the rules of descent. Therefore, in the present case, where there are no such words, the true construction of the will is that the grandchildren take per stirpes, and not per capita. * * * Such presumption, however, will be easily controlled by any words in the will indicating a different intention of the testator; as if, after a devise to 'heirs,' it be added 'in equal shares,' or 'share and share alike,' or 'to them and each of them,' or 'equally to be divided,' or any equivalent words, intimating an equal division, then they will take per capita each in his own right. But, when there are no such words, the presumption is that the testator referred to the familiar law of descents and distributions to regulate the distribution of his bequest." See, also, *Cummings v. Cummings,* 146 Mass. 501 (16 N. E. Rep. 401); *Rand v. Sanger,* 115 Mass. 124; *Holbrook v. Harrington,* 16 Gray, 102; *Houghton v. Kendall,* 7 Allen, 72; *Baskin's Appeal,* 3 Pa. St. 304; *Cook v. Catlin,* 25 Conn. 387; *Spivey v. Spivey,* 37 N. C. 100; *Osburn's Appeal* 104 Pa. St. 637; Schouler Wills (2 ed.), section 539; *Woodward v. James,* 115 N. Y. 346 (22 N. E. Rep. 150); *Richards v. Miller,* 62 Ill. 417; *Fisher v. Skillman,* 18 N. J. Eq. 229; *Jackson v. Alsop,* 67 Conn. 249 (34 Atl. Rep. 1106); *Thomas v. Miller,* 161 Ill. Sup. 60 (43 N. E. Rep. 848); *Dukes v. Faulk,* 37 S. C. 255 (16 S. E. Rep. 122); *Conklin v. Davis,* 63 Conn. 377 (28 Atl. Rep. 537). Applying the rule thus announced and so firmly established to the facts, we think it clear that Phœbe J. Flint is entitled to take per stirpes, and that her share should be fixed at one-fifth of the estate. The case of *Furenes v. Severtson,* 102 Iowa, 322, relied upon by appellee, is not in point.

II. The other point presented by the cross appellants with reference to the right of the Johnson heirs to take under

the will seems to be settled by the case of *McGuire v. Brown,* 41 Iowa, 650. In that case it is squarely held that an illegitimate child inherits from her mother, and that the fact of the mother's death before descent will not prevent the child from inheriting her share of the estate. See, also, *Milburn v. Milburn,* 60 Iowa, 411. While much that is said in the case of *In re Sunderland,* 60 Iowa, 732, seems to run counter to these cases, yet a careful examination of the opinions will show that there is no real conflict. But for the *McGuire Case,* the writer of this opinion would be inclined to the view that as the Johnson heirs do not inherit from their mother, but through her, they are not entitled to take under the will. As there is a conflict in the authorities upon the proposition, however, and as the rule announced in that case is a rule of property, and has stood for more than twenty years, it is better that it be not disturbed. The conflicting authorities to which we have referred will be found collated in note to *Croan v. Phelps,* 94 Ky. 213, 23 Lawy. Rep. Ann. 753 (s. c. 21 S. W. Rep. 874). It follows from what we have said that the judgment and decree of the district court is REVERSED on the appeal of Phoebe J. Flint, and AFFIRMED on the appeal of the other defendants.