6876

### HAGAN v. HANKS.

1. EVIDENCE—SECONDARY.—DIVORCE in a foreign State may be proved by the acts and lives of the parties, and the general repute in the community as secondary evidence after proof of loss by fire of the records of the court in which the divorce was granted. Admission of the laws of a foreign State relating to divorce was proper here under agreement that case should be heard on an agreed statement of facts and the testimony which may be taken by the parties.

2. WILLS.—Under provision of will that executor shall sell the property and divde the proceeds "share and share alike between all my living sisters or the lawful bodily heirs of any who may not be living," the division should be made between the living sisters and the lawful bodily heirs of deceased sisters *per capita.*

Before PURDY, J., Abbeville, August, 1907.  Affirmed.

Action by John A. Hagan and John W. J. Simpson, as administrators of William Johnson Stevenson, and in their own right, against Bettie E. Killingsworth *et al.* From Circuit decree John A. Hagan, William A. Hagan, Robert G. Hagan, Mary G. Greene, Margaret Nickles and Ann, Amelia Jackson appeal upon the following exceptions:

I. "Because his Honor erred in allowing Rebecca J. Hanks to offer in evidence upon the trial of this case the laws of the State of Virginia relating to divorce in that

State when the parties had agreed that such case was to be tried upon the agreed statement of facts and testimony which might be taken by the various parties. It is submitted that it was abuse of discretion on the part of the presiding Judge to allow such testimony upon the trial of such case.

II. "Because his Honor erred in holding that an action for divorce was brought by Washington Hanks against his wife under the laws of the State of Virginia when there is absolutely no competent testimony to prove the same, and when the preponderance of the evidence fails to show that such action was ever brought.

III. "Because his Honor erred in holding and finding that the record of the divorce proceedings between Washington Hanks and his first wife has been destroyed when the preponderance of the evidence fails to show that there was ever such proceeding, and when the preponderance of the testimony fails to show that if said proceeding was ever had the record has been destroyed.

IV. "Because his Honor erred in holding that the testimony in this case is sufficient to prove that Washington Hanks secured a divorce from his first wife prior to his marriage with the mother of Rebecca J. Hanks, his first wife being then living, when it is submitted that such testimony is insufficient to prove such facts in the following particulars:

a. "There is absolutely no testimony that process in that action was ever served upon the first wife of Washington Hanks, and no testimony to show that she ever made any appearance in any such alleged action.

b. "The testimony shows that under the laws of the State of Virginia the courts in that State have the right to grant a divorce, *a vinculo matrimonii*, and they also have the right to grant a divorce *a mensa et thoro*. In the former case a party may remarry, while in the latter case he can not. The testimony in this case failed to show that any cause of action

existed for granting a divorce *a vinculo matrimonii* and there is no testimony to show whether the alleged divorce was a divorce *a vinculo matrimonii* or a divorce *a mensa et thoro.*

c. "There is absolutely no testimony in this case that such case was brought in the proper court or in a court which had jurisdiction to grant a divorce.

d. "There is absolutely no proof of the grounds of divorce, and absolutely no proof as to the allegations of the complaint or petition upon which the alleged action was based, and, therefore, there is no proof to show that a cause of action was stated for a divorce *a vinculo matrimonii.*

e. "There is absolutely no proof that any decree was ever entered in said alleged case in accordance with the complaint. and also no evidence of its scope or restrictions. Therefore, we submit in this case that the preponderance of evidence fails to show that any divorce was ever granted to Washington from his first wife, and fails to show that he had a right to marry the mother of Rebecca J. Hanks at the time the marriage was contracted, his first wife being then living.

V. "Because the testimony in this case shows that at the time Washington Hanks married the mother of Rebecca J. Hanks he had a wife living in the State of Virginia, and Rebecca J. Hanks has failed to prove by the preponderance of the testimony that at the time of the second marriage the said Washington Hanks had a right to make a valid contract of marriage with her mother.

VI. "Because there is in this case no presumption that Washington Hanks was divorced from his first wife at the time he married the mother of Rebecca J. Hanks, and in the courts of this State there is and can be no such presumption. The first marriage is presumed to be valid, and the party who alleges a divorce must prove it by the clear preponderance of the testimony, which has not been done in this case.

VII. "Because his Honor erred in holding that the heirs at law of James H. Simpson and John Simpson, Jr., were entitled to share in the division of the estate of William Johnson Stevenson, when he should have held that the said James H. Simpson and John Simpson, Jr., never had an interest in the said estate, for the reason that they could only take in substitution for a sister who was living at the date of the will of William Johnson Stevenson. Their mother being at that time dead, it is submitted that neither she nor her lawful bodily heirs could take any interest in the estate under the will of William Johnson Stevenson."

Rebecca J. Hanks appeals on following exceptions:

I. "Because his Honor erred in holding that the gift to the lawful bodily heirs of any who may not be living was an original and not a substitutional gift, when he should have held that by the terms of the will in question the testator gave his two living sisters a vested remainder in fee in the land described in the complaint, and erred in not holding that at the death of the said sisters the land descended to their heirs at law.

II. "Because his Honor erred in holding that bodily heirs of Mrs. Simpson and sisters of the testator took an interest in said estate, when he should have held that they had no interest whatever in said estate.

III. "Because his Honor, in effect, construed the word 'or' in said will to mean 'and,' when there was no reason in said will or in the facts of the case to require such a construction, and his Honor erred in so holding.

IV. "Because his Honor erred in holding that Mrs. Rebecca J. Hanks was entitled to one-ninth of said estate, when he should have held that the following clause of said will: 'Then at the decease or marriage of my two sisters my executor, hereinafter named, will proceed to sell my whole estate, real and personal, and divide equally, share and share alike, between my living sisters, or the lawful bodily heirs of any who may be living, gave to Mrs. Hanks'

mother a vested transmissible interest to one-half of said estate, which at her death descended to her daughter, Rebecca J. Hanks, and, therefore, his Honor should have held that Rebecca J. Hanks was entitled to one-half of said estate.

V. "Because his Honor erred in holding that the gift in this case was an original gift and not a substitutional gift, when it clearly appears from the terms of said will that the testator intended that his two living sisters should take said estate at the death of the life tenant, and in the event of their death, then said estate was to go to their lawful bodily heirs.

VI. "Because the language used by the testator is not doubtful and there is no necessity to construe the word 'or' in said will to mean 'and,' and his Honor erred in putting such construction upon said will as to necessitate the changing of the word 'or' to 'and,' in order to allow the children of Mrs. Simpson to come in.

VII. "Because the plain meaning of said will was to give a life estate to his wife and two maiden sisters and to create a vested transmissible interest in remainder in his two daughters, Mrs. Hanks and Mrs. Hagan, and his Honor erred in not so holding and decreeing that Rebecca J. Hanks was entitled to a one-half interest in said estate after the payment of the expenses of litigation."

Elizabeth Killingsworth, John W. J. Simpson, Rebecca Ann Ellis, James S. Simpson, Iris Adeline Whitman, Marie Coleman, Hattie B. Johnson, Eugene Simpson and Mollie E. Simpson appeal on the following exceptions:

I. "Because his Honor erred in allowing Rebecca J. Hanks to offer in evidence upon the trial of this case the laws of the State of Virginia relating to divorce in that State, when the parties had agreed that such case was to be heard upon the agreed statement of facts and testimony which might be taken by the various parties. It is submitted that it was abuse of discretion on the part of the

presiding Judge to allow such testimony upon the trial of such case.

II. "Because his Honor erred in holding that an action for divorce was brought by Washington Hanks against his first wife under the laws of the State of Virginia, when there is absolutely no competent testimony to prove the same, and when the preponderance of the evidence fails to show that such action was ever brought.

III. "Because his Honor erred in holding and finding that the record of the divorce proceedings between Washington Hanks and his first wife has been destroyed, when the preponderance of the evidence fails to show that there was ever such proceeding, and when the preponderance of the testimony fails to show that if said proceeding was ever had the record has been destroyed.

IV. "Because his Honor erred in holding that the testimony in this case is sufficient to prove that Washington Hanks secured a divorce from his first wife prior to his marriage with the mother of Rebecca J. Hanks, his first wife being then alive, when it is submitted that such testimony is insufficient to prove such facts in the following particulars:

a. "There is absolutely no testimony that process in that action was ever served upon the first wife of Washington Hanks and also no testimony to show that she ever made any appearance in any such alleged action.

b. "The testimony shows that, under the laws of the State of Virginia, the courts in that State have the right to grant a divorce *a vinculo matrimonii,* and they also have the right to grant a divorce *a mensa et thoro.* In the former case a party might remarry, while in the latter case he can not. The testimony in this case failed to show that any cause of action existed for granting a divorce *a vinculo matrimonii,* and there is no testimony to show whether the alleged divorce was a divorce *a vinculo matrimonii* or a divorce *a mensa et thoro.*

c. "There is absolutely no testimony in this case that such case was brought to the proper court or in a court which had jurisdiction to grant a divorce.

d. "There is absolutely no proof of the grounds of divorce, and absolutely no proof as to the allegations of the complaint or petition upon which the alleged action was based, and, therefore, there is no proof to show that a cause of action was stated for a divorce *a vinculo matrimonii*.

e. "There is absolutely no proof that any decree was ever entered in said alleged case in accordance with the complaint, and also no evidence of its scope or restrictions.

"Therefore, we submit in this case that the preponderance of evidence fails to show that any divorce was ever granted to Washington Hanks from his first wife, and fails to show that he had a right to marry the mother of Rebecca J. Hanks at the time the marriage was contracted, his first wife being then living.

V. "Because the testimony in this case shows that at the time Washington Hanks married the mother of Rebecca J. Hanks he had a wife living in the State of Virginia, and Rebecca J. Hanks has failed to prove by the preponderance of the testimony that at the time of the second marriage the said Washington Hanks had the right to make a valid contract of marriage with her mother.

VI. "Because there is in this case no presumption that Washington Hanks was divorced from his first wife at the time he married the mother of Rebecca J. Hanks, and in the courts of this State there is and can be no such presumption. The first marriage is presumed to be valid, and the party who alleges a divorce must prove it by the clear preponderance of the testimony, which has not been done in this case.

VII. "Because his Honor erred in holding that the heirs at law of James H. Simpson had a vested interest in remainder of only one-ninth of said estate; whereas he should have held that James H. Simpson had a vested interest in remain-

der of one-third of said estate, which at his death descended to his heirs at law."

Carrie L. Baker appeals on following exceptions:

I. "Because his Honor erred in holding that John Simpson, Jr., had a vested interest in remainder of only one-ninth (1-9) of said estate; whereas he should have held that the following clause of said will, to wit: 'Then at the decease or marriage of my two sisters, my executor, hereinafter named, will proceed to sell my whole estate, real and personal, and divide equally, share and share alike, between my living sisters or the lawful bodily heirs of any that may not be living,' gave to John Simpson, Jr., a vested interest in remainder of one-third (1-3) of said estate, which at his death descended to his heirs at law.

II. "Because his Honor erred in holding that Mrs. C. L. Baker is entitled to only one twenty-seventh of said estate, when he should have held that she is entitled to one-ninth thereof."

*Messrs. G. B. Greene* and *Frank B. Gary,* for Carrie L. Baker, Elizabeth Killingsworth and others, cite: 2 Hill Eq., 328; 30 Ency., 813-16; 25 Eng. Rul. Cas., 765; 1 Speer. Eq., 320; 34 S. C., 69; 3 L. R. A., 775; 37 S. C., 482; 59 S. C., 4; 14 Rich. Eq., 48; 21 S. C., 513; 7 Rich. Eq., 133; 13 S. C., 573; 1 Hill Ch., 311; 2 Hill Ch., 41.

*Mr. Wm. P. Greene,* for John A. Hagan *et al.,* cites: Speer. Eq., 312; 30 Ency., 814; 5 Chan. Div., 494; 6 S. E. R., 183; 1 Mer., 20; 91 Am. St. R., 580; 65 S. C., 390; 7 Rich. Eq., 125; 37 S. C., 255. *As to the proof of divorce:* 74 S C., 407; 89 Am. St. R., 206; 201 U. S., 561.

*Mr. Wm. N. Graydon,* for Rebecca J. Hanks, cites: 5 Rich. Eq., 202; 65 S. C., 396; 3 Rich. Eq., 543, 555; 13 S. C., 531; 37 S. C., 255; 4 Kent., 198; 10 S. C., 392; 21 S. C., 513; 4 Rich. Eq., 482; 11 Rich. Eq., 527; 2 S. C., 68; 5

Wall., 268; 10 S. C., 387; 18 L. Ed. (U. S.); Poor v. Considine, 22 Id., 109. *As to proof of divorce:* Green. Ev.. Secs. 107, 545; 2 Strob. Eq., 174; 89 Am. St. R., 193; 23 At. R., 753; 95 Ia., 611; 74 S. C., 407.

April 20, 1908.    The opinion of the Court was delivered by

Mr. Chief Justice Pope.    In 1862 William Johnson Stevenson, of Abbeville County, in this State, departed this life intestate; by his last will, after providing for the payment of his debts, he devised and bequeathed as follows:

"That is to say, first, I give to my mother, Rebecca Stevenson, the tract of land on which I now live, containing 484 acres, more or less, bounded by lands of J. L. Ellis. J. F. Simpson, B. L. Latimer, and others, together with all my personal property, viz.: One negro boy, Alfus, about six years old; four horses; my interest in the stock of hogs on the plantation; also my interest in the crop of corn, cotton and wheat, household furniture, plantation tools, including two wagons; also my notes and accounts for her own proper use and benefit, during her natural life, allowing my two unmarried sisters, Mary Jane and Isabella Aveline Stevenson, to remain on the plantation and share the benefits of my said estate with my said mother during the lifetime of my said mother, or until they marry; my said mother, together with my two single sisters before mentioned, to have the sole use and benefit of my estate, real and personal, and my said mother to have the absolute and entire disposal of my estate, by will or otherwise, during her lifetime; and should my said mother. decease without making any disposition of my estate, my will is that my two before mentioned sisters remain on the plantation and have the sole use and benefit of my estate, real and personal, during their natural lives, or until they marry.    Should one of my sisters decease or marry, the survivor to have the benefit of my estate during her lifetime or until she marries; my aforesaid mother,

however, having the right to dispose of my estate during her lifetime as she may think proper; and should my said mother make no disposition of my estate during her lifetime, then at the decease or marriage of my two said sisters, my executors, hereinafter named, will proceed to sell my whole estate, real and personal, and divide equally, share and share alike, between all of my living sisters, or the lawful bodily heirs of any who may not be living."

Rebecca Stevenson, the mother of testator, departed this life not long after the said testator, the two sisters who were life tenants, to wit: Mary Jane and Isabella Aveline Stevenson, remaining in possession during their lives, and departed this life—one in 189    and the other in June, 1906.

The testator had four sisters living at his death, but one of testator's sisters, however, died before him, leaving as her heirs at law two sons, James H. Simpson and John Simpson, Jr.   Both the executors of the will died years ago; and the two plaintiffs herein, John A. Hagan and John W. J. Simpson, were appointed administrators, with the will annexed, of said testator; his real estate of 484 acres, and his small personal estate, is in the hands of said plaintiffs.

Differences have arisen between parties claiming to be heirs at law of testator as to the shares owned by the parties under the will; hence the plaintiffs, before exercising the power of sale, come into court and make all parties who claimed any interest defendants, and ask the Court to adjudge who were entitled, and to what shares, respectively.

All were adults except one, Eugene Simpson, who appears by his guardian *ad litem*.

The case came on for a hearing before his Honor R. O. Purdy in March, 1907, and was heard upon a certain agreed statement of facts, together with certain depositions taken in the State of Virginia in regard to the inter-marriage between Washington J. Hanks and Margaret Stevenson and also a copy of the laws of the State of Virginia regulating divorce from 1842 to 1870.

Judge Purdy rendered his decree in August, 1907, and all parties appealed therefrom. The reporter will report the exceptions.

The three questions which were raised at the hearing before the circuit judge and are now brought before us by appeal are, first, the legitimacy of Rebecca J. Hanks; second, the right of the defendants claiming to be heirs at law of the testator's deceased sister, Mrs. Simpson; third, should the distribution of the property be made *per stirpes* or *per capita?*

The circuit judge held that although a previous marriage existed between Washington J. Hanks and Mary Morris, yet they were duly divorced in the court of equity of Carroll County, in the State of Virginia, about 1855, and that thereafter, to wit: 1857 or 1858, the said Washington J. Hanks married Margaret Stevenson, who lived for many years in Carroll County, State of Virginia, until Washington J. Hanks died, in 1885, leaving Rebecca J. Hanks as the only issue of that marriage. The circuit judge, although no record evidence of the divorce of Washington J. Hanks from Mary was produced, owing to the destruction of the records by fire of the Circuit Court of Carroll County, Virginia, during the closing year of the war 1865, by the Federal soldiers, received the evidence of six witnesses who detailed with great circumstantiality the lives of Washington J. Hanks, Mary Morris and Margaret Stevenson Hanks during the many years in which they resided in Carroll County, Virginia. Every witness testified that it was understood and acted upon that Washington J. Hanks and Mary were divorced, including among those witnesses a brother of Mary Morris, and it was also testified that the parties lived within six miles of each other; one of these witnesses was a man who had been clerk of court for about forty years. Granted now that there is a difficulty in defendant Hanks' way as one of the heirs at law, yet if a

record had been destroyed testimony in relation thereto may be given; how otherwise could the right be made to appear. The highest character for uprightness was accorded these parties. Some question was raised as to the circuit judge having allowed the laws of the State of Virginia in regard to divorce to be introduced in testimony. In this matter we think the circuit judge presiding at the trial was right; no damage could justly arise therefrom and we unhesitatingly enforce the action of the judge in the admission of such testimony.

We are satisfied that the circuit judge properly admitted Rebecca J. Hanks to appear as an heir at law. All the exceptions directed against her admission are overruled.

Second, we are satisfied with the conclusion of the circuit judge in regard to this question, whether the sister of the testator died, she was represented by two heirs at law, and we hold that when the testator said: "that after the decease or marriage of my two said sisters, my executors hereinafter named, will proceed to sell my whole estate, real and personal, and divide equally, share and share alike, between all of my living sisters, or the lawful bodily heirs of any who may not be living," he meant that the lawful bodily heirs should be admitted along with any sisters who might be then living, and the testator carefully guarded amongst whom the division was to be made by requiring that the estate should be divided equally, share and share alike.

Third, we agree with the circuit judge in the conclusion that he reached here when he said: "I hold that the gift to lawful bodily heirs of any who may not be living, referring to the sisters mentioned above, is an original and not a substitutional gift. Therefore the parties who answer the description of lawful bodily heirs must take *per capita*, and not *per stirpes.*" *Duke* v. *Faulk,* 37 S. C., 255, 16 S. E., 122.

The testator made each party interested to take as an original gift, and not as a substitutional gift.

Under these circumstances we uphold the scheme embodied in the decree of the circuit judge for a distribution of the whole estate.

All the exceptions, therefore, which in any manner contravene Judge Purdy's decree are set aside.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.