FRED A. MARTIN, appellant, v. HARRY BEATTY et al., appellees.

No. 50649.

June 12, 1962.

Estella Harmel Wilkins, of Peoria, Illinois, and Cook & Drake, of Glenwood, for appellant.

Livingston, Day & Meeker, of Washington, for appellees.

LARSON, J.—While this is a real-estate partition suit brought by plaintiff, one of the beneficiaries under his grandfather's will, against the other benefited grandchildren, the nub of the controversy is whether the testamentary beneficiaries took interests in the property per capita, as the trial court held, or per stirpes.

The relevant facts are not in serious dispute. S. C. Story died testate on April 20, 1899, at age 85. His wife, Emma Story, died August 6, 1907. They had two daughters, Eudora and Lizzie. Eudora married Swayne Beatty in 1888 and they had six children, five of whom are defendants and the parties referred to as appellees herein, the sixth having died unmarried without issue July 15, 1918. Lizzie married Leon B. Martin in 1892 and they had two children, one of whom is the plaintiff-appellant, Fred A. Martin, and the other died in infancy prior to the death of S. C. Story.

S. C. Story left a will and codicil which were admitted to probate on the fifth day of September, 1899. The will provided for the payment of debts and funeral expenses, gave to his wife a life estate in all his property subject to a payment of $100 to each of the daughters, Eudora and Lizzie, and then provided:

"Fourth—And I direct that at the death of my wife Emma E. Story my said estate be divided equally between my two children Eudora B. Beatty and Lizzie D. Story each to share and share alike, but for their natural lives only.

"Fifth—And at the death of my two children, Eudora and Lizzie, I direct that my said estate be divided equally amongst the children of my said daughters Eudora and Lizzie each of said children to share and share alike."

The codicil reaffirmed the life interests granted to the two daughters in the original will and also provided that their interests should "not be assigned, transferred or mortgaged to any

person during their lifetime, but shall be enjoyed and occupied exclusively by themselves, this provision not being intended to prevent the leasing of the same or enjoyment of the proceeds therefrom."

It will not benefit this opinion to set out the description of the real estate in Washington County, Iowa, owned by S. C. Story at the time of his death, and so reference to that description in the trial court's decree will suffice.

The record discloses that subsequent to the death of their mother in 1907, Eudora and Lizzie executed a contract, Exhibit 7, dated March 29, 1915, which constituted the basis for the division between them as life tenants of the use and income from the real estate. It further discloses that upon the death of Eudora on January 26, 1922, the arrangement continued, with Swayne receiving the portion assigned to Eudora. When Swayne died on April 6, 1940, Lizzie claimed and received the entire income from this real estate until July 25, 1949. At that time one of the children of Eudora found a copy of the contract, Exhibit 7, among her father's papers, consulted a lawyer as to the rights of Eudora's offspring, which after some negotiations with the plaintiff, Fred A. Martin, and his lawyer resulted in a "Settlement Agreement", Exhibit 6, dated July 25, 1949. In this agreement signed by Fred A. Martin and his mother, Lizzie Martin, they were designated as first parties, and the living children of Eudora Beatty, defendants herein, were second parties. By its terms Lizzie surrendered to the Beatty children the net rental from all of the real estate for the crop year 1948, and it appeared Fred A. Martin approved the establishment of the interest of each grandchild of S. C. Story in the real estate as one seventh. The Beatty children in turn released and abandoned all claim for a portion of the rentals from 1940 to the crop year of 1948. This agreement further provided that after March 1, 1949, and until her death, Lizzie should have the right to the use, occupancy and possession of and all income arising from a specified portion of the real estate, and that the Beatty children collectively should have the same right as to the remaining specified portion. Lizzie Martin survived her husband and died on the 21st of March, 1959.

The trial court found the acknowledgment by Fred A. Martin that he held but a one-seventh interest in the remainder was one of the primary motivating reasons for the execution of the agreement by the Beatty children, and that as a result of its execution by all parties the contemplated litigation by the Beatty children for an accounting against Lizzie was not pursued. It also found Mr. Martin had competent advice and was not unlearned in settlement matters, being an experienced casualty adjuster. Martin did testify at the time he signed that he believed his share in his grandfather's property should have been a one-half interest, and that he had been advised his signing would fix and settle his interest once and for all, but his desire to spare his mother further annoyance and litigation caused him to execute the agreement. As plaintiff herein, he now claims a one-half interest on the grounds that the will of S. C. Story so provides, and that the execution of the settlement agreement was invalid. In view of the fact that we affirm the trial court's judgment holding he took per capita, we need not discuss the second contention. That issue appears moot, for the terms of the agreement merely reflect an interpretation of the will which we hold was correct.

As we understand appellant, it is his position that the provisions in the fourth and fifth paragraphs were not so clear that the judicial rules of construction should not apply, and that if they were applied a holding was required that the children of Eudora and Lizzie would take per stirpes and not per capita. Neither contention can be sustained. It was the trial court's conclusion that under the facts presented "it would be improper to distort or nullify an intention so clearly expressed by applying arbitrary or technical rules of construction." We agree, although we do not find an application of technical rules of construction would necessarily distort or nullify the testator's express intention here.

I. Although there is some confusion among authorities as to the import of certain words used by a testator to indicate his intention, nearly all authorities across the land agree that the determining factor in ascertaining whether beneficiaries under a will take per capita or per stirpes is the intention of the testator, and that this intention is to be found from the language

1242

used as applied to all the surrounding circumstances and conditions present in the mind of the testator at the time the will was made. Gilbert v. Wenzel, 247 Iowa 1279, 1281, 78 N.W.2d 793, and citations; Wright v. Copeland, 241 Iowa 447, 455, 41 N.W.2d 102, 107, and citations; Gaughen v. Gaughen, 171 Neb. 763, 107 N.W.2d 652; 3 Page on Wills, Lifetime Ed., section 1072; Annotations, 16 A. L. R. 15, 78 A. L. R. 1385, 126 A. L. R. 157, 13 A. L. R.2d 1023; 57 Am. Jur., Wills, section 1291. Of course a division of an estate per capita means by the number of individuals share and share alike, as opposed to a division per stirpes where those of more remote degree of kindred to the testator take by right of representation, or substitutionally. Gilbert v. Wenzel, supra; Safe Deposit & Trust Co. v. Lycett, 153 Md. 443, 138 A. 225; 3 Page on Wills, Lifetime Ed., section 1070; 70 C. J. S. 448.

True, as appellant contends, many authorities hold where there is doubt it should be resolved in favor of per stirpes distribution, for it is more in keeping with the laws of descent. Claude v. Schutt, 211 Iowa 117, 233 N.W. 41, 78 A. L. R. 1375. Others hold the presumption, although not a strong one, favors a per capita distribution. Annotations, 78 A. L. R. 1387. Under the wording of the will before us, we are not in doubt. Furthermore, resort to inferences or presumptions is unnecessary here, for the natural, usual and conventional meaning of the words used makes testator's intention amply clear. The words used clearly describe those who are to take. The gift made is direct to individuals, not by right of representation. The will provides for an equal division between beneficiaries, not for an equal division between the two daughters and then a division of each half to their respective children. Gilbert v. Wenzel, supra. It is uniformly recognized by authorities that words of a will are used in their natural, usual, popular and conventional meaning. In re Estate of Syverson, 239 Iowa 800, 807, 32 N.W.2d 799, and many citations.

We have repeatedly said "that the words of the testator will be given effect according to the approved usage of the language, unless the context or the peculiar circumstances under which the instrument was executed make it reasonably certain

that the words were employed by him in some other or more restricted or more enlarged sense." Anderson v. Wilson, 155 Iowa 415, 418, 419, 136 N.W. 134, 135. None appears herein.

 It is, of course, true that rules of construction of wills will be considered when they may be an aid to the court in ascertaining the intent of the testator, but they must be used to clarify, not confuse, the intent issue. Here, we are inclined to agree with the trial court's finding that the wording of the will itself expresses the testator's evident intent, and that no arbitrary or technical rules of construction, no matter how sound or wise they are, will prevail. In re Estate of Pottorff, 216 Iowa 1370, 1373, 250 N.W. 463. Obviously the court may not make a will for the testator, nor impose upon the will a forced or unnatural construction to accomplish what may now seem to be a more just or appropriate distribution of the estate. Although it may be argued the children of each child of testator should take his mother's share and that would be in keeping with the Iowa laws of descent, yet the usual meaning of the words testator used to express his intent do not in any way indicate a taking by representation. Eudora and Lizzie, under this will and codicil, never took more than the income from the property, and not being possessed of the corpus would not pass it to their children by descent.

Primary consideration must be given to the actual words used in Paragraph 5 of this will, which bequeaths the corpus of the estate. As pointed out by the learned trial court, the testator clearly was considering *all* of his grandchildren as one class, born and not yet born, when he said "the children of my said daughters Eudora and Lizzie", and not as two classes such as might be inferred if he had said it was to be divided between the children of his daughter Eudora and the children of his daughter Lizzie. In this wording we find no substantial evidence of an express intent to divide his estate into two parts, one for Eudora's children and one for Lizzie's children. In Paragraph 4 of the will and in the codicil, the use and income was divided between his two daughters, but we find no inference therein that such a division would affect a different direct bequest to the grandchildren even though by necessity they were also the heirs of their respective mothers.

■ II. It is the general rule that where the gift is to a class, the legatees take share and share alike unless it clearly appears the testator intended a different division. Volume 4, Page on Wills, Bowe-Parker Revision, section 36.17. See annotations in 78 A. L. R. 1392, 126 A. L. R. 163 and 13 A. L. R.2d 1039; In re Rosengarten's Estate, 349 Pa. 32, 36, 36 A.2d 310, 312. It is interesting to note in the Rosengarten case the court said, "It has always been held that such a gift to grandchildren, as a class, is per capita." There the court pointed out that the testator clearly intended the corpus of his estate to go to his grandchildren as a class, even though at that time he had no grandchildren. In the case before us no grandchildren were in existence when Mr. Story made his will, and only four at the time of his death, so we too must conclude from his language that he was thinking of each member of that class, if and when he or she came into existence, as an individual, and was not thinking of them merely as representatives of the parent. In accord with this view, see Restatement of Property, section 301d.

■ We conclude that it would be difficult to conceive of language which would more clearly express testator's desire that all of these children, his grandchildren, be considered as a class, and that each individual in the class receive an equal share in the property. Therefore, giving the words used their natural and usual meaning, the testator left his estate to his grandchildren, subject to the right ·of his two daughters to the use and income therefrom during their lifetime, and provided that at their death the property be *divided equally among* the individual grandchildren of testator, *each* to take a like share. This is a per capita bequest. .

■ III. Although we hold testator's expressions, taken as a whole, are not ambiguous, even if we consider rules of construction and the permissible legal effect of the words he used independently, we arrive at the same conclusion. The use of the words "amongst", "each" and "share and share alike" all have been considered indicative of a per capita intendment. It is held in In re Turner's Will, 208 N. Y. 261, 101 N.E. 905, Ann. Cas. 1914D 245, the word "each" may be used to individualize the members of a class, who will accordingly take per capita, and in Canfield v. Jameson, 201 Iowa 784, 787, 208 N.W. 369, we said,

"The use of the words 'share and share alike' would ordinarily indicate an intention that the distribution should be per capita." Also see In re Estate of Whittaker, 175 Iowa 718, 157 N.W. 135.

In Gilbert v. Wenzel, supra, 247 Iowa 1279, 78 N.W.2d 793, we considered the implications of several such words and pointed out the significance of the use of "between" rather than "among", "between" being a word to indicate two persons or groups, and "among" or "amongst" indicating several persons or individuals.

In Kalbach v. Clark, 133 Iowa 215, 223, 110 N.W. 599, 12 L. R. A., N. S., 801, 12 Ann. Cas. 647, we found in this language, " 'At her decease I wish the principal to be equally divided among the heirs of my four children' ", a direct and immediate gift to individuals. Thus they took as such and not by representation.

On the other hand we are unable to find in the other words testator used any clear indications he intended a per stirpes distribution. See Condee v. Trout, 379 Ill. 89, 39 N.E.2d 350. We cannot change the words "divided equally amongst the children of my said daughters Eudora and Lizzie" to read "divided equally between the children of my daughter Eudora and the children of Lizzie", which might well indicate two groups, as appellant believes we should. If we did, the other words testator used would become senseless. In order to emphasize his desire to treat each grandchild alike, the testator provided, "each of said children to share and share alike." How would this desire be accomplished in two classes unequal in number? On the other hand, the answer to that question seems to lend support to the single class determination.

IV. Reference is made to the fourth paragraph which divided a life estate "equally between" Eudora and Lizzie "for their natural lives only", and appellee believes it has some significance in this determination. We have difficulty with that reasoning. Clearly, Paragraph Fourth referred only to a life interest in income, and the remainder interest, which is the corpus of the estate, given to the grandchildren, was not involved. The remainder or title interest in the property after the death of the testator did not pass to his daughters, but vested in the grandchildren, subject only to the use of income by the daughters of testator during their natural lives. Katz Investment Co. v.

Lynch, 242 Iowa 640, 47 N.W.2d 800. Each grandchild alive at the time of testator's death, or born since that time, thus became owner of a one-seventh fee interest in the real property involved in this action. Since one of Eudora's children died unmarried and without issue, his share ascended to his parents and thence to his brothers and sisters, giving those brothers and sisters an additional undivided $\frac{5}{35}$ fee in the real property.

Appellant places his chief reliance upon the case of Clapper v. Clapper, 246 Iowa 899, 900, 70 N.W.2d 145, where we held a clause, " 'At the death of my wife * * * the use or rental of the above described real estate shall go to my children during their lifetime, and at their death shall be divided equally, and shall vest in "fee simple" between their children' " resulted in a per stirpes distribution between "their children". While taken from context, some of the phrases were given consideration therein which would indicate their use inferred a per stirpes distribution, i.e., "their death" was read "their respective deaths", and "their children" was read "their respective children". When considered with other provisions and circumstances, these phrases did create somewhat of an ambiguity requiring our construction, but such a construction is not required here.

However, even a casual look at the two instruments will disclose these instruments express different intentions. The only like words used appear to be "divided equally". As previously pointed out, the Story will also uses freely terms commonly used to denote per capita distribution, such as "amongst", "children of my said daughters" (a class denotation), "each", and "share and share alike", and only uses the word "between", indicative of two groups or classes, in referring to the division of the income between his daughters Eudora and Lizzie during their lifetime. Furthermore, the Clapper will used the words " 'between their children' ", which might reasonably be found to designate a division between two or more groups or classes, and which at best left the true intention of the testator on the group question in doubt. In the Clapper matter we considered the cases most similar to the one at bar of Claude v. Schutt, 211 Iowa 117, 118, 233 N.W. 41, 78 A. L. R. 1375; Canfield v. Jameson, supra, 201 Iowa 784, 208 N.W. 369; Johnson v. Bodine, 108 Iowa 594, 79 N.W. 348; Kling v. Schnellbecker, 107 Iowa 636, 78 N.W. 673; and

Kalbach v. Clark, 133 Iowa 215, 110 N.W. 599, 12 L. R. A., N. S., 801, 12 Ann. Cas. 647. We then announced that they were not in point, that they were of little help, and that no Iowa decision factually in point had been called to our attention. Due to the ambiguity and uncertainty of those provisions, we felt forced to consider rules of construction and presumptions as an aid in the determination of testator intent. Obviously no such method need be used to determine the intent of testator here. No such ambiguity appears in the matter at hand. The Clapper case is not factual in point.

One other appellant contention requires consideration. He argues because the life estate granted Eudora and Lizzie was a tenancy in common, and as tenants in common the remainder goes to the respective children of the life tenants, the indication is that the property descends per stirpes. Assuming but not conceding this would be the result here if the same property interest was given, only the use and income was involved in the bequest to Eudora and Lizzie. At their deaths this interest terminated completely. This expired bequest, of course, has no direct bearing on the will's provisions disposing of the corpus, which was made to entirely different parties, i.e., testator's grandchildren. Testator's gift to his daughters was a use, but to his grandchildren he gave a remaining fee. They both passed at the same time and by the same instrument, not in succession. The parties by agreement have disposed of the question as to who was entitled to the income before the death of Lizzie, and that matter is not in issue.

We furthermore find no uncertainty as to the time when the estate should be divided, i.e., "at the death of my two children", for it clearly refers to the death of the survivor. Although the words "or the survivor" are not found in the Story will, as in the Wenzel case, we do not attach significance to that fact. Only at the time of the death of Lizzie, the survivor, could the provisions of Paragraph Fifth be carried out. Gilbert v. Wenzel, supra.

V. As previously indicated, the conclusion that distribution is per capita makes unnecessary the consideration of questions involved in the "Settlement Agreement", Exhibit 6, or other

propositions presented in the briefs. The judgment of the trial court is affirmed.—Affirmed.

All JUSTICES concur except OLIVER, J., who takes no part.