In re Estate of Herbert Larson, deceased.

No. 51451.

(Reported in 131 N.W.2d 503)

NOVEMBER 17, 1964.

Mitchell, Mitchell & Murray and Arthur H. Johnson, all of Fort Dodge, for appellants.

Alan Loth, of Fort Dodge, for appellees.

THORNTON, J.—This is an application in probate in the estate of Herbert Larson to construe the will of his uncle, Robert E. Anderson. The uncle, Robert E. Anderson, whose will is here construed, executed his will in 1936. He died childless in 1944 at the age of 67.

His will, after providing for the payment of debts and funeral expense, gave his widow a life estate in, "all of my property of every kind." Paragraph three, giving rise to this action, is:

"Subject to the life estate given by Par. 2 of this will to my wife, Amanda Anderson, I give, devise and bequeath my property as follows:

"To my legal heirs I give, devise and bequeath my farm in Clay Township * * *, my said heirs to share my property equally.

"My land in Burnside Township * * * I give, devise and bequeath in equal shares to my legal heirs and to the children of Louise Johnson and Anna Lundgren, share and share alike. It being understood that during the life of my wife, Amanda Anderson, the bequests made in this paragraph shall have no legal force or effect and she shall take the entire income from said property as specified in Par. 2 hereof."

The wife, Amanda, was appointed executrix. She died in 1962.

The facts known to the testator at the time of the execution of his will are, his sister, Amanda Larson, was deceased, survived by six children. These children, or their successors in interest, are appellants here. His brother, Paul, and his sisters, Anna Lundquist and Agnes Sederholm, were alive. No reason appears why testator did not know the children of his brother and his sisters at the time he executed his will and until his death. These persons, Amanda's children, and Paul, Anna and Agnes, all survived the testator. Louise Johnson and Anna Lundgren were sisters of testator's wife, they died in 1940. The class composed of their children was thus closed in 1940 and known to testator for four years before his death.

Testator died intestate as to the remainder interest of all of his personal property and as to real estate located in Gowrie, Iowa. The extent of his intestate property or when it was acquired is not shown.

The trial court construed paragraph three of the will to call for a per stirpes disposition of the Clay Township farm, i.e., his brother and two sisters living at his death each took

a ¼ interest and the children of Amanda Larson, testator's predeceased sister, as a group took a ¼ interest. The Burnside Township land was divided ⅙ each to Paul, Anna and Agnes; ⅙ to the children of Amanda, 1/36 each; ⅙ to the children of Louise Johnson; and ⅙ to the children of Anna Lundgren; thus Louise's two children each received a 1/12 interest and Anna's three children a 1/18 interest each.

The appellants contend the will calls for a per capita distribution of the land devised. The appellees contend the trial court was right on a per stirpes basis.

 I. It is well settled law (1) the testator's intent is the polestar and must prevail; (2) his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will, (b) his scheme of distribution, (c) the circumstances surrounding him at the time he made his will, and (d) the existing facts; and (3) technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain. In re Burleigh's Estate, 405 Pa. 373, 175 A.2d 838, 839; In re Estate of Zang, 255 Iowa 736, 739, 123 N.W.2d 883, 885; and Gilbert v. Wenzel, 247 Iowa 1279, 1281, 78 N.W.2d 793. To aid in determining whether a per capita or per stirpes distribution was intended certain principles and rules of construction have been enunciated.

 In this case it is not disputed but the term "my legal heirs" refers to those upon whom the laws of descent and distribution cast the estate on the death of the ancestor. In this case where the testator was childless and his parents deceased, his legal heirs were his living brother and sisters and the children of his deceased sister. Sections 636.40 and 636.31, Code of Iowa, 1962. And it is not contended the will speaks from any other time than the death of the testator.

 Though appellees contend to the contrary, it is clear the devise of real estate in each instance here is direct to the individuals, not by right of representation. The words used describe those who are to take. Gilbert v. Wenzel, 247 Iowa 1279, 1283, 78 N.W.2d 793; Martin v. Beatty, 253 Iowa 1237,

1245, 115 N.W.2d 706; and Parker v. Foxworthy, 167 Iowa 649, 149 N.W. 879.

The controversy as to the Clay Township farm is over the words "my said heirs to share my property equally" and as to the Burnside land over the words, "in equal shares" and "share and share alike."

When the gift is to a class composed of the same degree of relationship the above words are quite universally held to intend a per capita distribution, unless of course contrary language appears. However, where as here the class, my legal heirs, is composed of brothers and sisters and nieces and nephews, a difference of opinion arises. See annotations, 16 A. L. R. 15, 78 A. L. R. 1385, 126 A. L. R. 157, and 13 A. L. R.2d 1023; 3 Page on Wills, Lifetime Ed., section 1080, pages 285, 286, and section 1082, pages 290, 291. The theory contended for by appellants is the words "legal heirs" describe who shall take and "equally" and "share and share alike" describe how they shall take. This was the view taken by this court in Parker v. Foxworthy, 167 Iowa 649, 149 N.W. 879, in an opinion written by Judge Deemer in 1914. The case is in point in principle with this one. In Parker, the testator, after providing for a life estate for his wife, provided (page 650 of 167 Iowa, page 879 of 149 N.W.):

"* * * After her decease all of my said estate remaining unused shall be distributed to my heirs share and share alike.

"I also direct that if any of my said heirs shall not survive my said wife, * * *, that portion of said estate which would have gone to said heir had such an one been living, shall be divided share and share alike between the legal heirs of my said heir at that time deceased."

The testator's "heirs" were children and grandchildren (children of deceased children). The children contended for per stirpes distribution, the grandchildren for per capita distribution. In affirming a per capita distribution this court said at page 651 of 167 Iowa, page 879 of 149 N.W.:

"All the parties to this suit * * * are heirs of Joseph Foxworthy, and he made no distinction between them. They are named as a class, and each is put upon an equality with

the other. The gift is direct and immediate to his heirs, and it specifically says that they shall take share and share alike. No thought of substitutional or representative gift appears, save as one or more should not survive the wife. Had it not been for the clause 'for equal division,' the presumption might arise that the heirs should take according to the rules of descent, as said in Johnson v. Bodine, 108 Iowa 594."

In Johnson v. Bodine, 108 Iowa 594, 595, 79 N.W. 348, the will provided a life estate in one half of the estate to one brother, "with remainder to my heirs at law," and for a life estate to his other brother with this provision, "The remainder as hereinafter stated." It was then provided, "* * * at the death of my brothers, * * * that my entire estate, both real and personal, be divided between my heirs at law." Testator's heirs were his brothers and issue of three predeceased sisters, including his nieces and nephews and grandnieces and grandnephews. At pages 597, 598 of 108 Iowa, page 349 of 79 N.W., we quoted with approval from Daggett v. Slack, 8 Metc. (Mass.) 453, as follows:

"The court are of opinion that, according to the established rule of law, a devise to 'heirs,' whether it be to one's own heirs or to the heirs of a third person, designates not only the persons who are to take, but also the manner and portions in which they are to take, and that, when there are no words to control the presumption of the will of the testator, the law presumes his intention to be that they shall take as heirs would take by the rules of descent. Therefore, in the present case, where there are no such words, the true construction of the will is that the grandchildren take per stirpes, and not per capita. * * * Such presumption, however, will be easily controlled by any words in the will indicating a different intention of the testator; as if, after a devise to 'heirs,' it be added 'in equal shares,' or 'share and share alike,' or 'to them and each of them,' or 'equally to be divided,' or any equivalent words, intimating an equal division, then they will take per capita each in his own right. But, when there are no such words, the presumption is that the testator referred to the familiar law of descents and distributions to regulate the distribution of his bequest."

In Parker v. Foxworthy and Johnson v. Bodine, both supra, we adopted the rule that the words, "in equal shares", "share and share alike" or equivalent words intimating an equal division show the testator intends a per capita division. That when the devise or bequest is to "heirs" without more, "heirs" designates not only who shall take but the manner and portions which they are to take and it is presumed they take under the laws of descent. But when the words intimating an equal division are added a different intention is indicated. In both of the above cases heirs of varying degrees of relationship to the testator were involved.

Our holding in the above cases is contrary to the holding in the following authorities cited by appellees, Felts v. Felts, 188 Tenn. 404, 219 S.W.2d 903; MacLean v. Williams, 116 Ga. 257, 42 S.E. 485, 59 L. R. A. 125; Allen v. Boardman, 193 Mass. 284, 79 N.E. 260, 118 Am. St. Rep. 497; New England Trust Co. v. McAleer, 344 Mass. 107, 181 N.E.2d 569; and Porterfield v. Lenover, 310 Ill. App. 37, 33 N.E.2d 718.

These cases hold words indicating an equal division may be given effect by being applied to the division between the classes of heirs. This is the same result that would be reached without such words.

Appellees contend Parker v. Foxworthy, supra, is not in point because no partial intestacy was involved as here and the remainder was to vest on the widow's death; that specific directions were given showing his plan varied from intestacy. These are true, but did not influence the result. As shown by the portion of the Foxworthy will set out it did state, "After her decease * * * shall be distributed", and provided for a per stirpes distribution for heirs of testator who did not survive the widow. However, the controversy was not between heirs of heirs, but between heirs living at the time of testator's death and the decision rests on the ground the provision for equal division did not leave anything for presumption and indicated a per capita distribution.

Throughout their argument appellees insist testator's will must be construed as part of a plan of intestacy. This is a mistaken view. Testator did die intestate as to the remainder

interest of his personal property and his real estate in Gowrie, Iowa, all of which property was included in the widow's life estate. Whether this was by design or inadvertent we do not know. In either event it does not indicate an intention the property devised should be distributed as intestate property. The making of a will is an indication the testator intended a distribution other than by the laws of descent. To construe the will here as indicating an intention to have the described real estate pass in the same manner as intestate property has the effect of nullifying the provision made as to the Clay Township farm and as to the Burnside land so far as testator's heirs are concerned. These would have been unnecessary. All testator would have had to do to obtain the result of the trial court's holding was to provide a ⅙ interest for the Johnson children and a ⅙ interest for the Lundgren children in the Burnside land. We should no more strike out provisions of the will than rewrite it.

Appellees also rely heavily on our decisions in Clapper v. Clapper, 246 Iowa 899, 70 N.W.2d 145; Claude v. Schutt, 211 Iowa 117, 233 N.W. 41, 78 A. L. R. 1375; Canfield v. Jameson, 201 Iowa 784, 208 N.W. 369; and Fletcher v. Fletcher, 200 Iowa 135, 204 N.W. 410. None of these cases deals with a will containing provisions similar to the Anderson will. They all do refer to the preference in law for a distribution according to the laws of descent where there is an ambiguity in the will or the scheme and purpose of the testator cannot be ascertained with reasonable certainty. In Fletcher the uncertainty was caused where a provision for a life estate in testator's son and his wife provided the remainder was "to their children." The son had a child by a previous marriage. The language used could properly refer to such a child or it might properly apply to only the children of the marriage of the named son and wife. The preference indicated was applied coupled with that of requiring plain words to disinherit an heir.

In Canfield, if there was an ambiguity, it is in the words "their heirs or assigns" used as follows: "I * * * devise * * * the residue * * * be equally divided between my above named children, their heirs or assigns share and share alike." The contention was the children of a deceased child should take per

capita with the living children. This contention was rejected because the devise was to the children not their heirs or assigns. We pointed out it would hardly call for a per capita distribution if a child had assigned his interest to two or more persons.

In Claude the testator devised the remainder to one son's children, five named children and the children of a deceased son. In later paragraphs he appointed trustees for the portion of the estate willed to the children of each of such sons. Reliance was placed on the proposition "share and share alike" imports a per capita division. We there point out that such rule of construction is faint and yields readily to counterindications in the terms of the will. The counterindications in the Claude will were, the children of testator were named individually, the grandchildren as a class, and the use of the word "portion" indicating testator's understanding each set of grandchildren took "one portion."

In both Canfield and Claude, Parker v. Foxworthy, supra, is cited for the proposition a per capita distribution was intended by the provision "to my heirs share and share alike."

In the Clapper case we again point out the phrase "share and share alike" imports a per capita distribution is faint and yields to other provisions indicating a contrary intent. The provision under consideration there was, "to my children during their lifetime, and at their death shall be divided equally, and shall vest in 'fee simple' between their children." After considering the authorities we there held, "their deaths" must be read, "their respective deaths" and "their children", "their respective children" because no child can be the child of both brothers and sisters. This means a distribution per stirpes.

A mixing of rules is noted in these cases from a rule that words indicating an equal division import a per capita distribution is faint and yields to a counterindication in the will to a rule favoring per stirpes distribution when an ambiguity or uncertainty appears. In either rule you must have either a counterindication or an ambiguity. Parker v. Foxworthy is authority words indicating an equal division do not create an ambiguity. And in the case before us there is no counterindication in the terms of the will. The only counterindication pointed to by ap-

pellees is intestacy and the will is unwise in that those composing the class, i.e., testator's heirs, could change between the date of the will and the death of the testator. The wisdom of a will is not for the courts but the testator. He undoubtedly was aware of, and certainly could have been aware of, the age and condition of health of his heirs during such period. If he chose not to change his will we should not do so.

The foregoing is sufficient to indicate the Clay Township farm should be distributed per capita to the heirs. This holding is fully supported not only by Parker v. Foxworthy, 167 Iowa 649, 149 N.W. 879, but by Kramer v. Larson, 158 Neb. 404, 63 N.W.2d 349, and citations; Lyons v. Brown, 352 S.W.2d 549 (Ky. 1960); and Coppedge v. Coppedge, 234 N. C. 173, 66 S.E.2d 777, majority and dissenting opinions.

II. This leaves for consideration testator's intention in regard to the Burnside land. Insofar as the provision for the "children of Louise Johnson and Anna Lundgren, share and share alike", standing alone, is concerned, on the basis of the argument made by appellees as to the heirs and our holdings in Martin v. Beatty, 253 Iowa 1237, 115 N.W.2d 706, and Gilbert v. Wenzel, 247 Iowa 1279, 78 N.W.2d 793, a per capita distribution should be ordered. The children of Louise and Anna comprise one class. They are not related to testator by consanguinity but by affinity. They are his wife's nephews and nieces. There is no question here of taking by representation. They would receive nothing by the laws of descent, they had to take as individuals.

In Gilbert v. Wenzel, supra, on page 1283 of 247 Iowa, we quoted with approval from Kling v. Schnellbecker, 107 Iowa 636, 638, 78 N.W. 673: "'* * * when an estate is devised to be divided equally between certain persons, whether specifically named, or designated by more general terms, as the children or heirs of certain persons, the language imports the taking of an equal share by each legatee, in the absence of other provisions showing a contrary intention. In other words, they take per capita, and not per stirpes.''

See Gaughen v. Gaughen, 172 Neb. 740, 112 N.W.2d 285.

There are no provisions showing a contrary intention.

Appellants contend the Burnside land should be distributed per capita, a $\frac{1}{14}$ share to each of the nine heirs.

The brother and sisters of testator or their successors are the only appellees who have filed a brief. They contend the Burnside land should be divided in equal shares to three groups —(a) to my legal heirs (b) to the children of Louise Johnson and (c) Anna Lundgren. This is not what the trial court did. The trial court distributed the Burnside land $\frac{1}{6}$ each to the successors in interest to the brother and the sisters of testator, $\frac{1}{6}$ to the six nephews and nieces, children of his predeceased sister, Amanda Larson, as a group, $\frac{1}{6}$ to the children of Louise Johnson as a group, and $\frac{1}{6}$ to the children of Anna Lundgren, as a group. There is no cross-appeal. The trial court has actually given the heirs-at-law $\frac{2}{3}$ of the Burnside land and $\frac{1}{3}$ to the Johnson and Lundgren children. No contention is made here, nor as near as the record shows in the trial court, the words "and to" between "legal heirs" and "children of" in the devise of the Burnside land had the import of separating the devisees into two groups, one composed of legal heirs, the other of children of Louise Johnson and Anna Lundgren. See annotations, 16 A. L. R. 28, 78 A. L. R. 1391, 126 A. L. R. 164, 13 A. L. R.2d 1039, and In re Moore's Estate, 157 Pa. Super. 296, 43 A.2d 359.

We think the import of the testator's language is to devise the Burnside land per capita to the 14 persons in the class composed of his legal heirs and children of Louise Johnson and Anna Lundgren. He did not use any language other than the words "and to" that in anyway denotes an intention to separate into classes as above indicated. The language does not support a separation into three groups as contended by appellees nor as held by the trial court. There is no reason to separate the children into two groups nor is there any reason to separate the Larsons from the other legal heirs. None of the authorities cited by either side so holds. If these persons are not separable into classes or groups they are all within the same class and each should take an equal share or per capita. This gives effect to all testator's language, "in equal shares" and "share and share alike" and includes nothing outside of that language. Ewing v. Gibson, 199 Va. 860, 102 S.E.2d 327.

III. This brings us to the division on a per capita basis of $\frac{1}{14}$ to each one. This has the effect of allowing more to the two Johnson children than allowed them by the trial court. Ordinarily one who has not appealed is not entitled to a more favorable decision here. Kellerhals v. Kallenberger, 251 Iowa 974, 976, 103 N.W.2d 691. However, a generally recognized exception is applicable here where the relief granted has been asked by appellant throughout the case, the rights of such appellees are necessarily involved, and to deny such would result in injustice. 5 Am. Jur.2d, Appeal and Error, section 708, page 154; 5B C. J. S., Appeal and Error, section 1835, page 232; and In re Estate of Sanderson, 183 Cal. App.2d 740, 6 Cal. Rptr. 893.

IV. Appellees urge in support of the trial court the conduct of the parties after the death of the testator constitutes a practical construction of the will by the parties and appellants, by such conduct, are now estopped to claim a larger share and are barred by laches. The conduct complained of consists in appellants paying their share of the Iowa inheritance tax on the same basis as the division of the property by the trial court. They also paid a drainage assessment in 1954 on the Clay Township farm on the same basis. In 1945, during the course of administration of testator's estate, the attorney then handling the estate wrote a letter to Paul Anderson, the brother, and sent a copy to each of the others wherein he stated the will was unusual in that he disposed of only the farmland, "* * * it gives Mrs. Amanda Anderson a life estate in all of his property, and then specifically describes the farmlands that go to his heirs and to children of two of his sisters-in-law. * * * the heirs would be made up, I think, of you and the three sisters who were living at the time the Will was made. * * * I thought at first it might be necessary to get a court order to construe the Will, but if all of the interested parties are agreed in the construction, then such an order will not be necessary."

In another letter written in 1954 by another attorney the parties were advised of their respective shares of the drainage assessment. This letter contains a computation showing the share of the assessment owed by each.

In the estate of Agnes Sederholm, one of testator's sisters,

who died in 1961, federal estate tax was paid on the basis of Mrs. Sederholm owning ¼ of the Clay Township farm and ⅑ of the Burnside Township land.

First, the plea of laches is without merit, appellants were not entitled to a beneficial interest in the land until the death of the widow in 1962.

The trial court held there was a practical construction of the will by the parties. This is a circumstance in favor of a similar construction, though not conclusive and binding on the court. 95 C. J. S., Wills, section 627, page 888, and 57 Am. Jur., Wills, section 1131, page 725. See, as having some bearing, Guilford v. Gardner, 180 Iowa 1210, 1222, 1223, 162 N.W. 261.

The principle of practical construction is applied only where the will is actually ambiguous and the conduct of the parties entirely unequivocal. 57 Am. Jur., Wills, section 1131, page 725. Or where the elements of estoppel clearly appear. See annotation, 67 A. L. R. 1272.

In this case the will is not ambiguous as above pointed out. The conduct of the parties with reference to the payment of inheritance taxes and drainage assessments is in no manner detailed in the evidence. Nothing is shown except the fact of payment. The first letter from the attorney does not actually point out the problem; though it does refer to the heirs as consisting of the brother and three living sisters. This, of course, was contrary to fact, apparently unknown to the attorney at the time. The second letter certainly could not be misunderstood as to the share being charged to each one. There is no evidence to show what prompted the inclusion of the ¼ and ⅑ interests in the land in Mrs. Sederholm's estate except in the stipulation it is stated the executrix would testify she and her mother (Mrs. Sederholm) believed the ownership was as set out and no party had claimed otherwise.

The trial court held the acquiescence and payment of taxes and assessments by appellants did not constitute an estoppel. We agree. The acts as shown in the record are equivocal and do not show reliance on what appellants did. The payments by appellees in the testator's estate and in the listing of the ¼ and ⅑ interests in the Sederholm estate are as consistent with a mis-

taken belief as they are with reliance on appellants' payments. Appellants were not called to make a claim to the land while the life tenant lived unless more is shown. McDowell v. McDowell, 141 Iowa 286, 119 N.W. 702, 31 L. R. A., N. S., 176, 133 Am. St. Rep. 170, cited by appellees, is in point in principle but the facts differ from those present here. And in Browning v. Kannow, 202 Iowa 465, 470, 210 N.W. 596, it is pointed out a fraudulent intent is not necessary to work an estoppel, it is sufficient if a fraudulent effect will follow. It is there further pointed out the one against whom the estoppel is claimed must know or have reasonable grounds to believe another will act in reliance on his conduct. No such showing is made here.

The case is reversed and remanded for a decree consistent with this opinion.—Reversed and remanded.

All JUSTICES concur except HAYS, J., not sitting.