Charles F. WAGG, Co-Executor of the Estate of Curtis L. Wagg, Deceased, Appellant,

v.

C. I. MICKELWAIT and A. T. Wollenhaupt, Co-Executors of the Estate of Mary L. Wagg, Deceased; Nette Belle Linn, individually and C. I. Mickelwait, as Conservator for said Nette Belle Linn, Appellees.

No. 53274.

Supreme Court of Iowa.

March 11, 1969.

R. Richard Bittner, Monty E. Stratton and William S. Gibb, Davenport, for appellant.

John E. McCracken, G. W. Vander Vennet, Davenport, and W. O. Weaver, Wapello, for appellees.

BECKER, Justice.

This is a will construction case. On application of the executor the trial court construed the will in favor of the estate of testator's wife. Testator's legal heirs appeal. We affirm.

On July 27, 1966 Curtis Wagg and wife Mary were involved in an automobile accident which resulted in the death of both spouses. Mary outlived Curtis by about an hour and forty-five minutes.

The couple had been married over thirty years but had no children. At death the

principal asset of Curtis Wagg's estate was a 180 acre farm in Louisa county which had been in the Wagg family since his grandfather came from Germany in 1840 and occupied it as a homestead. Curtis inherited 100 acres of the farm from his father. He bought the other 80 acres from his brother who had received it from their father. At his death Curtis was farming the farm along with an 80 acre tract belonging to his sister. She too had received the acreage from their father.

The will is short. Items II and III read: "ITEM II. I give, devise and bequeath all my property, both real, personal or mixed, to my beloved wife, Mary L. Wagg; *should she survive me,* to be hers absolutely and forever.

"ITEM III. In case that my said beloved wife, Mary L. Wagg, *should not be living at the time of my death,* then in such event I give, devise and bequeath all of my property, whether real, personal or mixed, wheresoever located, to my legal heirs, then living, established by the Laws of the State of Iowa, applicable to descent and distribution." (Emphasis added.)

Curtis Wagg had three brothers and a sister; one brother had predeceased leaving two adult children. These people were the heirs at law of Curtis Wagg. Charles Wagg, one of the brothers, is co-executor of the estate. He seeks construction of the will on behalf of the Wagg heirs and is referred to as plaintiff.

Mary L. Wagg died intestate. She had three brothers but her sole heir is her mother Nette Linn, who is elderly and whose affairs are now being handled by a conservator.

I. Plaintiff asserts but one proposition. The word *survive* as used in the will should be interpreted to mean *meaningful survival.* Of course, if this interpretation is accepted, it is then argued that survival by 105 minutes is not meaningful survival. Therefore, Mary Wagg cannot be held to take under the will and the estate of Curtis Wagg must pass to his heirs at law.

In a carefully considered opinion the late Judge George O. Van Allen held the word survive must be given its ordinary and accepted meaning and the court cannot add the word meaningful unless the testator used the term himself. We agree.

■ In re Estate of Larson, 256 Iowa 1392, 1395, 131 N.W.2d 503 says in part: "It is well settled law (1) the testator's intent is the polestar and must prevail; (2) his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will, (b) his scheme of distribution, (c) the circumstances surrounding him at the time he made his will, and (d) the existing facts; and (3) technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain." In re Estate of Winslow, 259 Iowa 1316, 147 N.W.2d 814 approves the above rules.

In Martin v. Beatty, 253 Iowa 1237, 1242, 115 N.W.2d 706, 709, we find another rule: "We have repeatedly said 'that the words of the testator will be given effect according to the approved usage of the language, unless the context or the peculiar circumstances under which the instrument was executed make it reasonably certain that the words were employed by him in some other or more restricted or more enlarged sense.' Anderson v. Wilson, 155 Iowa 415, 418, 419, 136 N.W. 134, 135."

■ The purpose for which extrinsic evidence is admissible is explained in Flynn v. Holman, 119 Iowa 731, 737, 94 N.W. 447, 449: "The purpose for which extrinsic evidence may be legally admitted is not to add to or vary the meaning of a will nor to prove an unexpressed intention of the testator, but to enable the court, by the light of the circumstances surrounding the execution of the instrument, to determine just what was meant by the words actually employed by him."

■ Both phrases "survive me" and "not be living at the time of my death"

have such a clear and commonly accepted definition as to preclude any interpretation. They must be read together in interpreting the will. There are no peculiar circumstances shown which would make it reasonably certain testator employed the words in an enlarged sense.

Webster's Second International Dictionary defines "survive" as follows: To remain alive or existent; to live on; to continue to exist; to live beyond the life or existence of; to live longer than; to outlive; outlast the end of; as to survive a person a disaster or one's period of usefulness." Cf. Borden v. World War II Service Compensation Board, 243 Iowa 892, 899, 54 N.W.2d 496. Webster's defines "alive" as follows: "Having life in opposition to dead; living; being in a state in which the organs perform their functions; as, an animal or a plant which is alive. * * *."

II. Plaintiff admits Mary survived Curtis in the ordinary accepted sense of the term "survive"; but they argue testator did not use the term survive in its ordinary accepted sense. This they say is shown by the circumstances surrounding the acquisition of the 180 acre property and his expressed desire that the Wagg farm remain in the Wagg family.

█ In addition to the fact the farm had been in the family for three generations plaintiff showed decedent worked the 180 acres with his sister's 80 acres, insisted on the sister's participation in management and expressed the desire to his sister that he wanted the home farm kept in the family. "What Lucille (Mary) has should go to her family and what I have should go to my family." This testimony was received in violation of the Dead Man Statute, Code of Iowa, 1966, section 622.4, but the objection on that ground came after the testimony was admitted and without excuse for the delay in objecting. We therefore consider the testimony as having been elicited without objection.

█ Plaintiff's evidence, which they adduced to show intent, demonstrates nothing more than an attitude as distinguished from an expressed intent. The expressed intent of Curtis Wagg was to provide for his wife; testamentary intent that the farm remain in the Wagg family was not expressed. Thus, Curtis Wagg's dispositive scheme, as expressed by his will, belies the intent his sister attributes to him. Courts will not make a new and, in this case, more elaborate will for the testator. In re Estate of Hogan, 259 Iowa 887, 146 N.W.2d 257, 259.

The trial court carefully noted the differences between this case where "survive" alone was used and White v. Taylor, 155 Tex. 392, 286 S.W.2d 925; Hackensack Trust Co. v. Hackensack Hospital Assn., 120 N.J.Eq. 14, 183 A. 723 and In re Estate of Muller, 50 Misc.2d 1068, 272 N.Y.S.2d 231, where additional terms such as "die simultaneously", "common disaster" and "common accident" were used. In each of those cases the primary named beneficiary outlived the testator a short period but was not allowed to take under the testator's will because of the interpretation of the additional phrase. Therefore the contingent beneficiaries under the will took the property. Here there are no words requiring interpretation and such cases are not in point. Affirmed.

All Justices concur.