**In the Matter of the ESTATE of Minnie GIFFIN, Deceased.**

**Gail C. McLAREY et al., Appellants,**

v.

**John A. BRIGHT, Appellee.**

**No. 53472.**

Supreme Court of Iowa.

April 8, 1969.

Ivan D. Wilson and J. C. Irvin, Shenandoah, for appellants.

Stephens & Millhone, Clarinda, and Eaton & Eaton, Sidney, for appellee.

LeGRAND, Justice.

This is an appeal from an order dismissing plaintiffs' objections to the appraisal of real estate in the Estate of Minnie Giffin, deceased.

Minnie Giffin died March 28, 1968. Her Last Will and Testament was admitted to probate in Fremont County. Paragraph III of the will provides as follows:

"All real estate owned by me at the time of my death shall be appraised by the inheritance tax appraisers, and the said John A. Bright and Earl V. Bright, or either of them, shall have the opportunity to purchase said real estate at the appraised value thereof, provided, however, that they shall elect to purchase the same, and enter into a contract for the purchase thereof with the executors of my estate within six months from the date of the appointment of the executors; and, should they elect not to purchase said real estate, then it shall be sold by my said executors, as hereinafter provided, and the proceeds thereof

shall become a part of the residuary of my estate."

The inheritance tax appraisers at the time in question were James Moseley, John Gottsche, and Leonard Winkler, who filed their appraisal of the assets of the estate of Minnie Giffin, deceased, and fixed the value of her real estate at $89,241.00 for 310 acres of land in Page and Fremont Counties.

John A. Bright filed his election under the terms of the will and entered into a contract with the executors of the estate, of whom he is one, to purchase the real estate at the value fixed by the inheritance tax appraisers.

The objectors are residuary distributees, who will benefit by any increase in the price at which John A. Bright buys the land since the greater the value, the larger their residuary shares.

The objections recite that the real estate was appraised at an average of $287.87 per acre and assert the actual value at that time was approximately $560.00 per acre. The objectors claim the appraisers failed to follow the provisions of chapter 450, 1966, Code of Iowa, particularly section 450.37, which provides the appraised value shall be the "market value in the ordinary course of trade."

They ask the appraisement made by the inheritance tax appraisers be set aside and the value of the real estate be established for purposes of sale to John A. Bright at $174,000.00. They rely on section 450.32, 1966, Code of Iowa, which authorizes the court to reject an appraisal "if it finds that the appraisement was made at a greater or less sum than the value of the property in the ordinary course of trade, or that the same was not [made] fairly or in good faith." This section further provides that if an appraisement is set aside, the court shall fix the value of the property for inheritance tax purposes.

The executors and John A. Bright, individually, filed a motion to dismiss these objections. Following a hearing, the trial court entered an order which provided in part as follows, "Motion is duly argued and submitted * * * and the court makes thereon the following findings and conclusions:

"That the * * * provision of the will of Minnie Giffin, deceased, [by which John A. Bright is given an option to purchase real estate] is clear and unambiguous.

"That the procedure adopted by the objectors undertakes to have the valuation placed upon the real estate by the inheritance tax appraisers set aside and a valuation determined by the court placed thereon for the purposes of the option granted John A. Bright. That this was not the will of the testatrix.

"That an option to purchase may be granted by will. That the testatrix had the right to grant such an option to whomever she chose and to prescribe the method for arriving at the price to be paid. Having done so, and absent a showing of bad faith affecting the appraisal which is not alleged, the optionee is entitled to purchase at the valuation thus determined."

The trial court thereupon sustained the motion to dismiss the objections filed and this appeal followed. We agree with the trial court.

The issue is a narrow one and depends solely on testamentary construction. The parties agree the testatrix could provide for the sale of her real estate to whomever she selected, at whatever price she determined, if that intention is manifest from her will. Our task is to determine her intent.

█ Courts have the power to interpret and construe a will but may not rewrite it or change its terms by construction. 95 C.J.S. Wills § 586, page 709. In the case

of In re Estate of Larson, 256 Iowa 1392, 1395, 131 N.W.2d 503, 504, we said, "It is well settled law (1) the testator's intent is the polestar and must prevail; (2) his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will, (b) his scheme of distribution, (c) the circumstances surrounding him at the time he made his will, and (d) the existing facts; and (3) technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain."

In another will construction case, In re Estate of Hogan, 259 Iowa 887, 889, 146 N.W.2d 257, 258, we said, "Of course, the governing rule in the interpretation of a will is to arrive at the intention of the testator. The complete will and all its terms must be considered. The testator's intention must be gathered from the language of the will where it is plain and unambiguous. The question is not what the testator meant to say but what he meant by what he did say. * * *"

We recently reannounced those views in In re Estate of Winslow, 259 Iowa 1316, 1322, 147 N.W.2d 814, 818, and Wagg v. Mickelwait, Iowa, 1969, 165 N.W.2d 829.

In the latter case we also quoted this with approval from Martin v. Beatty, 253 Iowa 1237, 1242, 115 N.W.2d 706, 709, "We have repeatedly said 'that the words of the testator will be given effect according to the approved usage of the language, unless the context or the peculiar circumstances under which the instrument was executed make it reasonably certain that the words were employed by him in some other or more restricted or more enlarged sense.' * * *"

This brings us to the real point of difference between the litigants: Did Minnie Giffin, by naming the inheritance tax appraisers as the persons who were to place a value on her real estate under the option granted in her will, intend that the appraisal be made under the provisions of chapter 450, Code of Iowa, or did she intend merely to identify the persons who were to make the appraisal?

As already noted, the trial court found the language used was clear and unambiguous. If we were to disagree with this conclusion, we must engraft in the will of Minnie Giffin all the provisions of chapter 450 relating to appraisal. This would necessarily include a finding, among others, that she intended the trial court to fix the price at which John A. Bright could exercise his option in the event the appraisal as made by the persons designated for that purpose failed to meet the standards of section 450.37.

This would, indeed, be a far cry from the will which Minnie Giffin actually executed, and there is nothing in the will to indicate it is one which she desired to make. Under the canons of construction announced in the authorities already cited, we are not justified in putting such a strained construction on the language used nor in extending its meaning far beyond that permitted "according to the approved usage" of the words themselves.

Our conclusion that the provisions of chapter 450 are not by implication a part of the will in question disposes of the objections. The case then comes squarely within the rule of In re Eckey's Estate, 192 Iowa 572, 575, 185 N.W. 118, 119, where we held under similar circumstances that the value fixed by the appraisers named in the will was controlling in the absence of bad faith or fraud. No such allegations are made by these objectors. This is also decisive of the contention the objections filed could not properly be disposed of on a motion to dismiss. We again agree with the trial court that in the absence of an allegation of bad faith or fraud, the objections set forth no basis

upon which the relief asked for could have been granted.

The order appealed from is therefore affirmed.

Affirmed.

All Justices concur.