In the Matter of the ESTATE OF Hallie M. SHERRILL, Deceased.

Appeal of Ross SHERRILL, Max Sherrill and Dale Sherrill.

No. 87–546.

Court of Appeals of Iowa.

March 9, 1988.

Timothy W. Hamann and Bruce L. Gettman, Jr., of Clark, Butler, Walsh & McGivern, Waterloo, for objectors-appellants.

Charles F. Hinton and Bruce B. Zager of Hinton & Zager, Waterloo, for executors-appellees.

Considered by HAYDEN, P.J., and SACKETT and HABHAB, JJ.

HAYDEN, Presiding Judge.

Objectors, Ross Sherrill, Dale Sherrill, and Max Sherrill, appeal the decision of the district court to approve the executors' final report and account in the estate of Hallie Sherrill, their stepmother. They assert the joint, reciprocal, and mutual will entered into between Hallie Sherrill and Elmer Sherrill, the objectors' father, prevented Hallie from making unequal dispositions of her property to her children and to Elmer's children. The objectors also assert the district court erred by approving the executors' computation of the inheritance tax on Hallie's estate.

Our review of appeals of this nature is de novo. Although we are not bound by the trial court's findings of fact, we do give weight to them, especially where the credibility of witnesses is involved. *Matter of Estate of Bruene*, 350 N.W.2d 209, 211 (Iowa App.1984).

Prior to their marriage in 1968, Elmer and Hallie entered into an antenuptial agreement on July 5, 1968. This agreement stated that:

> [T]he Parties hereto are in mutual agreement that in the event of the death of either of these Parties after the solemnization of their contemplated marriage, leaving the other Party hereto surviving as his (her) lawfully wedded spouse, or in the event that the marriage relationship should be dissolved by a decree of divorce or annulment, then, in either of such events neither of them ought to be entitled to any share of interest in any of the property, either real or personal, now owned by the other one of these Parties, or that may be owned by such other one at any time hereafter during the continuance of such marriage relationship, nor

in the proceeds from any of such property that such other Party may have sold, or otherwise disposed of, prior to the termination,—whether by death, divorce, or annulment,—of the marriage between these two Parties; also, that any and all of the aforesaid property, real and personal, now owned by either of these Parties, or hereafter acquired by either of them, and all interests and rights therein, should be left and kept entirely free from any interest therein, or control thereof or thereover, on the part of the other one of these Parties, and should be entirely subject to the free and uncontrolled right of the respective Party now owning such property to dispose of the same in whatever manner he (she) may choose, whether by will or otherwise, and, at the option of such owner, to permit such property to pass by inheritance to his (her) legal heirs, excepting, only, in the respect that is hereinafter expressly provided.

Thereafter, on December 9, 1975, Elmer and Hallie executed a joint, reciprocal, and mutual will. It is the interpretation of this will which the parties dispute. The objectors contend the will prohibited Hallie from making unequal dispositions of her property after the death of Elmer on September 3, 1979. The executors assert disposition of the property involved was not governed by the will. They contend the will only provided for disposition of the joint property of Elmer and Hallie, and the property of the first of them to die; it did not, and was not intended to, provide for disposition of the separate property of the surviving spouse.

To determine which of these interpretations is the correct one, we apply the following criteria, as enunciated in *In re Estate of Larson*, 256 Iowa 1392, 131 N.W.2d 503 (1964):

(1) [T]he testator's intent is the polestar and must prevail; (2) his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will, (b) his scheme of distribution, (c) the circumstances surrounding him at the time he made his will, and (d) the existing facts; and (3) technical rules or canons of construction should be re-

sorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain. *Id.* at 1395, 131 N.W.2d at 504–05.

In support of their contention Elmer and Hallie intended their children to share their entire estates equally (on a per stirpes basis), the objectors rely on the second and third paragraphs of the will.

The second paragraph provides, in pertinent part:

All the rest, residue and remainder of the property of the first of us to die, whether real, personal or mixed, of joint tenancy property, or tenancy in common, or sole ownership, wherever the same may be situated, of which the first to die may die seized, be the owner of, or be entitled to, specifically revoking any joint tenancy provision to the contrary, the first to die does give, devise and bequeath unto the survivor for life, to be held by the survivor for life, as a life estate and not in fee simple. . . .

All the rest, residue and remainder of the property of the first of us to die, referred to in paragraph SECOND, is given:

One-half (½) in value of all such residue as then determined, shall be divided into equal shares, share and share alike, equally, and per stirpes, to and among the three (3) children of Hallie M. Sherrill, namely, Carroll G. Jensen, Mirian Lentzkow, and Kenneth A. Jensen.

The remaining One-half (½) in value of all such property, as herein provided, then owned at the death of the survivor of either of us, shall be divided into equal shares, share and share alike, per stirpes, to the children of Elmer D. Sherrill, namely, Phyllis L. Gifford, Dale D. Sherrill, Ross M. Sherrill, and Max D. Sherrill.

This gift is secondary to the life estate in this same property given to the survivor in the preceding paragraph, and is meant to constitute the remainder interest.

Although this paragraph suggests the testators intended to dispose of more than just their joint property, it clearly and un-

ambiguously refers only to the property of the "first of us to die." As such, it does not apply to Hallie's separate property since Hallie survived Elmer.

The third paragraph of the will similarly suggests a disposition of more than just the testators' joint property. However, its provisions were to apply only if Elmer and Hallie died as the result of a common disaster. The objectors concede that such is not the case here, but they assert these paragraphs evince the intention of Elmer and Hallie to leave their children equal shares of all of their property.

Other provisions of the will militate against this interpretation, though. The following language in the preamble of the will suggests the testators intended the will to affect only their joint property and not their separate property, which was already protected by the antenuptial agreement:

> We do further hereby ratify and affirm and state that on the 5th day of July, 1968, we did enter into an Antenuptial Agreement of which we are fully cognizant, and since our marriage, we have joined in the joint purchase of property, we do hereby direct as follows.

Similarly, the seventh paragraph of the will notes that the restrictions on dispositions by the survivor, which were created by the will, only applied to "property, real or personal, passing to the survivor by operation of law, or by virtue of this Will." The property Hallie unequally disposed of was her separate property she brought to the marriage and not property she obtained by virtue of Elmer's death. The objectors dispute this finding, but they cite no support in the record for their contention to the contrary. We are persuaded from our review of the record the property involved had been owned separately by Hallie. Thus, the restrictions in the will were not intended to apply to the disposition of that property.

We conclude, based on the foregoing, the will was not intended to apply to the separate property of the surviving spouse and did not, therefore, restrict the disposition thereof.

We turn now to the inheritance tax issue. Under Iowa Code section 450.9 certain exemptions from inheritance tax are allowed, including $50,000 for each child entitled to inherit under the law of this state. Iowa Code § 450.9(2). The executor computed the inheritance tax as though all of the property had been received through Hallie. It was error for the district court to approve this portion of the final report and account. At least some of the property the objectors received was through their father, Elmer, as the remainder after Hallie's life estate. Hallie's children also received some property in this manner, by virtue of the second paragraph of the will, and should accordingly pay some tax.

It is unclear to us, however, the extent to which the property received by the testators' children was from this remainder or from Hallie's estate. We therefore reverse on this issue and remand to the district court for specific findings of fact regarding such origin and for the appropriate computation of inheritance tax.

In their reply brief, the objectors discuss an evidentiary issue. The parties dispute whether the issue was properly raised. Suffice it to say the objectors cite no authority for their position so we deem the issue waived, in any event. Iowa R.App.P. 14(a)(3).

Costs of this appeal are to be taxed one-half to the objectors and one-half to the executors, and costs of the Supplemental Appendix are to be taxed to the objectors.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.